**UNITED STATES, Appellee,**

v.

**Brooks D. BOOKER, Fireman, U.S. Navy, Appellant.**

No. 54,468.
NMCM 85 2143.

U.S. Court of Military Appeals.

Sept. 28, 1987.

For Appellant: *Major R.P. Walton, USMC* (argued); *Commander Frederick N. Ottie, JAGC, USN* and *Captain John M. Dillon, USMCR* (on brief).

For Appellee: *Major Laura L. Scudder, USMC* (argued); *Captain Carl H. Horst,*

*JAGC, USN* and *Lieutenant Linda P. McIntyre, JAGC, USNR* (on brief); *Lieutenant Michael Mudgett, JAGC, USNR.*

### Opinion of the Court

COX, Judge:

Appellant was tried by general court-martial for conspiracy to commit rape; conspiracy to commit indecent acts; rape; housebreaking; and committing indecent, lewd, and lascivious acts, in violation of Articles 81, 120, 130, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 920, 930, and 934, respectively. He was found guilty of rape, but not guilty of the remaining offenses. He was sentenced to total forfeitures, reduction to pay grade E–1, confinement for 2 years, and a dishonorable discharge. The convening authority approved, and the Court of Military Review affirmed, the findings and sentence.

We specified the following issue for review:

WHETHER APPELLANT WAS PREJUDICED BY THE MILITARY JUDGE'S ANSWERS TO THE COURT MEMBERS' QUESTIONS ABOUT RAPE BY FRAUD AND IMPLIED CONSENT.

Appellant and several of his shipmates rented some rooms at a Navy Lodge[1] for the purpose of celebrating his birthday. During the night, the victim and one of appellant's friends went to one of the rooms, where they engaged in consensual sexual intercourse. The Government's evidence was that the victim fell asleep as a result of alcoholic intoxication and lack of sleep (extreme fatigue). As she slept, some members of the party took photographs of her lying naked on the bed. Subsequently, other members of the group, including appellant, engaged in sexual intercourse with her.

The Government's theory of rape was based on the fact that the victim was incapable of consenting to appellant's acts of sexual intercourse with her because of her extreme intoxication and fatigue. As proof

of her condition, the Government points to evidence that, during appellant's encounter with the victim, she uttered the name of the individual with whom she had initially engaged in consensual intercourse, thus suggesting that she lacked the capacity to consent to appellant's acts.

Appellant admitted having intercourse with the victim on the night in question. He also confirmed that she had called out the name of her original companion, but he asserted that this occurred after he had finished. He testified that he believed she consented to intercourse with him, and he did not realize until afterward that she may have thought he was her original partner. He contends that he was reasonable in his belief and that, in any event, the victim's conduct was such that it indicated consent regardless of who she thought her partner was.

Prior to findings, the military judge instructed the members on the elements of rape. He explained the issue of consent or lack of consent in these terms: "If there is actual consent, although obtained by fraud, the act is not rape." He further instructed the members on the issue of mistake of fact as a defense. *See United States v. Baran,* 22 M.J. 265 (C.M.A.1986). These instructions were submitted to the court members without objection.

During deliberations, the members requested clarification of the instructions, and a lengthy colloquy ensued between the president of the court-martial, the military judge, and counsel. *See* Appendix. It is from these supplementary instructions that the specified issue arises. We must decide whether these instructions were erroneous and, if so, whether they constitute reversible error.

Before passing judgment on the instructions, we first turn our attention to the law of rape. Article 120 of the UCMJ provides:

(a) Any person subject to this chapter who commits an act of sexual intercourse with a female not his wife, by force and *without her consent,* is guilty of rape.

---

1. A motel-like facility provided at various naval installations for the purpose of providing temporary quarters for military personnel and their families.

(Emphasis added.) Paragraph 199a of the Manual for Courts-Martial, United States, 1969 (Revised edition), adds:

If there is *actual consent*, although obtained by fraud, the act is not rape.

(Emphasis added.) The question is—what sort of fraud is consistent with "actual consent?" It is a question of first impression for this Court.

There are differences of opinion as to whether "consent" relates only to the act or also to the actor. *Compare Lewis v. State*, 30 Ala. 54 (1857), *with State v. Atkins*, 292 S.W. 422 (Mo.1926). *See also* R. Perkins, *Criminal Law* (hereinafter Perkins) 214–16 (3d ed. 1982); Annot., 91 A.L. R.2d 591 (1963). Perkins observes:

The general rule is that if deception causes a misunderstanding as to the fact itself (fraud in the *factum*) there is no legally-recognized consent because what has happened is not that for which consent was given; whereas consent induced by fraud is as effective as any other consent, so far as direct and immediate legal consequences are concerned, if the deception related not to the thing done but merely to some collateral matter (fraud in the inducement).

Perkins, *supra* at 215 (footnote omitted).

■ Clearly, fraud in the inducement includes such general knavery as: "No, I'm not married"; "Of course I'll respect you in the morning"; "We'll get married as soon as . . ."; "I'll pay you ___ dollars"; and so on. Whatever else such tactics amount to, they are not rape.

■ The question is—what is fraud in the *factum* in the context of consensual intercourse? The better view is that the "*factum*" involves both the nature of the act and some knowledge of the identity of the participant. Thus in the "doctor" cases, consent would not be present unless the patient realized that the "procedure" being employed was not medical, but sexu-

al. *See* Perkins, *supra* at 214. Further, while it is arguable that there may be people who are willing to hop into bed with *absolutely* anyone, we take it that even the most uninhibited people ordinarily make some assessment of a potential sex partner and exercise some modicum of discretion before consenting to sexual intercourse. Thus, consent to the act is based on the identity of the prospective partner.[2]

■ This is not to suggest that knowing the partner's true name or anything about him or her is necessary to consent. The use of a false name may well amount to fraud in the inducement, but it does not alone vitiate consent. This is consistent with the view expressed in the Manual that the act is not rape if consent was *obtained* by fraud. Para. 199a, Manual, *supra*. Where there is fraud in the *factum*, there is no *actual consent.*

We now turn to the military judge's instructions to determine whether they accurately stated the law. In this regard, we note that no objections were made to the judge's instructions at trial, and no additional instructions were requested. The record of trial demonstrates, however, that the court members needed some clarifications. The president inquired whether it would be "fraud" if "[s]he did consent, but it was a different person who took advantage of it[?]" The judge replied:

Then you would have to determine whether or not her consent was actual, and if it was actual consent on her part, and *even though it was obtained by fraud, then the act is not rape.*

(Emphasis added.) Earlier, the judge had equated the terms "fraud" and "trick." If anything, these instructions gave appellant a windfall because the judge did not specify what type of fraud could be used to obtain consent. Thus, the members could conclude that knowingly taking advantage

---

2. In light of the two separate opinions, I must acknowledge that perhaps I have treated the subject of "fraud in the *factum*" too gently. To be more basic, for there to be actual consent, a woman must be agreeable to the penetration of her body by a particular *"membrum virile,"* Stedman's Medical Dictionary 1049 (4th Unabridged Lawyers ed. 1978 reprint); it is quite irrelevant whether she knows the "real" identity of the owner thereof.

of mistaken identity—fraud in the *factum*—was a complete defense.

The president also sought clarification of the term "consent," asking:

> [W]e are a bit confused on actual or implied. Can implied consent be used the same as actual consent? Your Honor, if I may clarify it a little bit further, if, and using the term "implied," could body action be considered consent?

To that question the judge correctly responded, "[Y]ou could imply that ... [the victim] gave her consent by the way she moved her body around." However, the judge then queried, "Is your question, if there is implied consent although obtained by fraud, is the act rape?" Upon receiving an affirmative response, he explained:

> Seems to me that it's a contradiction in terms. That you can get actual consent through fraud, but I'm not sure how you could get implied consent through fraud.... I do not believe that the word, "implied" can be substituted for the word, "actual."

■ Here the judge was clearly wrong. Apparently, he confused two different ideas. One either consents to sexual intercourse or does not consent; both "implied" and "express" consent are but forms of "actual consent." Consent is consent. "Implied" and "express" modify consent to show how it was communicated. Implied consent is communicated by the conduct of a person, whereas express consent is communicated by words or affirmative acts manifesting agreement.

Appellant contends that the members could have understood the instructions to mean:

> [I]f there is implied consent, although obtained by fraud, then a rape has occurred. Applied to the facts of this case, if the members believed that the sexual intercourse was obtained by fraud, ... but that her consent was manifested in her actions and body movements, then they had no choice but to convict.

■ Though we agree that the instruction was incorrect, appellant was not preju-

diced. His theory was that the victim actually consented to his actions, or at least he reasonably and honestly believed she consented. The court members were adequately instructed on both theories and rejected them. As a fall-back position, appellant argues that the victim consented to the act, even though he may have tricked her into thinking he was someone else, and this consent, though obtained by fraud, was a defense.

However, we have indicated that only consent obtained by fraud in the inducement is a defense to rape. Fraud in the *factum* is the counterpart of consent. Appellant's theory is that he defrauded the victim in the *factum*. There is no evidence whatever that he defrauded her in the inducement, and he has not so claimed either at trial or on appeal. Therefore, the judge's erroneous instruction did not prejudice appellant.

Indeed, in view of the overly broad instruction that consent to intercourse could be obtained by *any* fraud or trick, the court members must have concluded that the victim was so drunk that she did not consent even to the *act*. A glance at the photographs of the victim introduced as prosecution exhibits, coupled with her testimony and that of others present at the "party," confirms the members' abundant basis for such a conclusion.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

## APPENDIX

PRES: The members of the court would like clarification, Your Honor, of the term, "when you use consent by fraud as not being rape" in your instructions. Also, as used by the trial counsel early on, rape and he used the term "trick." Are those synonymous? Request clarification on those and also the term, "consent." Is there such thing as actual or implied and what those two imply.

MJ: As far as your last question, I would think that as to a definition of actual

consent or implied consent, you can simply use a dictionary definition that you might have in regard to that particular term. Would counsel agree to that?

TC: Yes, sir.

DC: Yes, sir.

MJ: As regard to your other questions, I do recall the trial counsel commenting something to the effect that this was a case of rape by trick. I would think that under the circumstances that you could equate the two terms, "trick" and "fraud," you certainly don't have to, but I would think based upon the evidence before the court that the two terms are fairly synonymous. Would counsel have any objection to that?

TC: No, sir. The trial—my remarks as trial counsel were essentially "it was rape through trick or fraud" with the synonymous meaning in addition with the fact that she was in—she was unable to give consent because of her condition.

MJ: Captain Rush, do you have any comments?

DC: No, sir, I don't have any comments.

MJ: Do you have any objection to my categorization of those terms as synonymous?

DC: No, sir.

MJ: Now perhaps, I'll try to clear up your third point. You're instructed that if Fireman Booker knew that ... [the victim] was asleep or unconscious to an extent rendering her incapable of giving consent, then the act was rape. However, if there was actual consent on the part of ... [the victim], and that consent was obtained by fraud, then the act was not rape. Does that clear up the point or does it raise other questions that you might have?

PRES: Your Honor, the question again goes to, and we are a bit confused on actual or implied. Can implied consent be used the same as actual consent? Your Honor, if I may clarify it a little bit further, if, and using the term "im-

plied," could body action be considered consent?

MJ: I think—I think basically in regard to this, that again, you have to use your common sense and your knowledge of human nature and the ways of the world and if you want to, you don't have to, but if you want to, you could imply that ... [the victim] gave her consent by the way she moved her body around. That's a determination for all of you to make. I think your other question probably goes to whether or not you can substitute the word "implied" for the word "actual." In my instruction concerning if there was actual consent although obtained by fraud, then the act is not rape. Is your question, if there is implied consent although obtained by fraud, is the act rape? Is that your question?

PRES: Yes, sir.

MJ: Seems to me that it's a contradiction in terms. That you can get actual consent through fraud, but I'm not sure how you could get implied consent through fraud. As one involves trickery of some kind to get an implied consent and it seems to me that there would have to be an actual consent which was obtained by some false means or false pretenses, so, therefore, *I do not believe that the word, "implied," can be substituted for the word, "actual." If you follow through my reasoning.*

PRES: Yes, sir.

MJ: Do either counsel have any objection to that instruction?

TC: No, sir, as long as the members understand that in order to have actual consent, the woman, ... has to be able to give actual consent in a mental condition—able—whereby she is able to give actual consent.

MJ: I think he's made a point that's well taken. In order to get actual consent, she would have to know what's going on and make a conscious decision as to whether or not she wanted to consent

to an act of intercourse. Captain Rush?

DC: Your Honor, I concur with the court's instruction concerning the fraud or trickery, but I do want the members to understand that as to the broad issue of consent on the rape and the indecent act charges, that they are certainly free to determine that she gave an implied consent through her actions as the court described earlier.

MJ: I think he's saying the same thing that I was saying, just paraphrasing it. And certainly, you are at liberty to make your own determination as to whether or not there was an implication to the accused that by the way she was moving her body around or kissing or talking or something like that, he may have inferred that in fact, she was consenting.

PRES: Your Honor, one additional—if a person does consent, but it's a different person that takes advantage of that, is that then fraud?

MJ: I assume that you might be talking about a situation where you might think, some of you might think that ... [the victim] consented to the act of sexual intercourse because she thought that the coactor was going to be Presbury. Now what's your question, is that's ....

PRES: She did consent, but it was a different person who took advantage of it.

MJ: *Then again, I think we are back to the fraudulent situation. Then you would have to determine whether or not her consent was actual, and if it was actual consent on her part, and even though it was obtained by fraud, then the act is not rape.*

(Emphasis added.)

SULLIVAN, Judge (concurring):

I have reservations concerning what constitutes "fraud in the factum." Otherwise, I agree this case should be affirmed.

EVERETT, Chief Judge (concurring in the result):

I agree with the principal opinion that, in interpreting the term "consent" in Article

120(a) of the Uniform Code of Military Justice, 10 U.S.C. § 920(a), a distinction must be drawn between fraud in the factum and fraud in the inducement. Thus, a misrepresentation as to the inducement for engaging in sexual intercourse does not invalidate consent. On the other hand, "consent" to intercourse obtained by means of a misrepresentation as to the nature of the act being performed does not preclude a conviction for rape.

The principal opinion takes the position that purported consent to intercourse is invalid if the woman has misidentified the man with whom she has intercourse because the identity of the sex partner is part of the nature of the act to which the woman agrees. However, the "doctor" cases referred to in that opinion are not completely analogous. A woman who thinks that a man is performing a medical procedure upon her when he touches a private part of her body has a very different state of mind towards the act involved than does a woman who realizes from the outset that a touching of intimate areas is for purposes of sexual gratification. On the other hand, when a woman voluntarily engages in sexual intercourse, she understands that the act performed is not for medical or other purposes—regardless of whom she believes to be her male partner.

The advice given by the military judge to the court members in response to their inquiry about the effect of fraud on consent to rape is quoted in the appendix to the principal opinion. As I read the instruction in the context of the prior discussion between the military judge, the court members, and counsel, it ultimately informed the members that they should acquit Booker if they concluded from all the evidence that he had obtained intercourse by taking advantage of the woman's mistaken belief that he was someone else. This instruction was more favorable to appellant than the instruction on consent that would be appropriate if this Court adopted the principal opinion's view that a woman's misidentification of her sex partner invali-

dates her consent to intercourse. Therefore, it is unnecessary to determine whether that view is correct; and I reserve judgment thereon.

Unfortunately, when taken as a whole, the "clarification" which the judge provided the court members after they requested further instruction was not fully successful. The judge's terminology was confusing when he juxtaposed "actual consent" —a phrase apparently derived from the discussion in the Manual for Courts-Martial*

—against "implied consent." Confusion was compounded by his comment that "implied consent" could not be obtained through fraud. Nonetheless, in the absence of defense objection or request for further instruction, and in light of the military judge's response to the president's specific inquiry about taking advantage of fraud as to the identity of the sex partner, I conclude that appellant was not prejudiced. Therefore, I join in affirming the decision below.

---

* See para. 199a, Manual for Courts-Martial, United States, 1969 (Revised edition) (in effect at the time of the alleged rape); Part IV, para. 45c(1)(b), Manual for Courts-Martial, United States, 1984.