OPINION OF THE COURT
John Michael Galasso, J.
Defendant moves for an order dismissing the information pursuant to CPL 100.40 (1) (b), (c); 170.30 (1) (a), (f), (g) and 170.35.
Defendant was charged with sexual misconduct in violation of Penal Law § 130.20 (1) which provides:
"A person is guilty of sexual misconduct when:
*998 "1. Being a male, he engages in sexual intercourse with a female without her consent.”
The information states that the defendant, the twin brother of complainant’s boyfriend, deceived the complainant into having sexual intercourse with him without her consent.
The relevant facts contained in the complainant’s statement are as follows: On March 28, 1993 at approximately 3:30 a.m. complainant was sleeping in her apartment which she left unlocked because she was expecting her boyfriend, Lenny Hough, to come over. Complainant was awakened by a knock and believed that it was her boyfriend at the door. She thought that he had forgotten the key she had given to him. (It is interesting to note that complainant states that she left the door unlocked for her boyfriend, yet she stated that she had just given him a key.)
Complainant instructed the male to come in believing it was Lenny, her boyfriend. After the light was turned on, complainant realized that the male was not Lenny but was his twin brother, the defendant, Lamont Hough. They talked shortly and complainant told defendant to lock the door when he left. The complainant then went back to sleep but was again awoken at approximately 5:00 a.m. when she heard a knock at the door and heard a male say "open the door”. Complainant believed the male was her boyfriend because it sounded like him. Complainant got out of bed and, curiously enough, turned off the light located near the door rather than turn it on. Complainant opened the door and thought it was Lenny who entered the apartment, as it was dark and she couldn’t see. The two spoke momentarily and then complainant returned to bed. The male, who smelt of alcohol, also got into bed next to the complainant. Complainant began talking to the male as if it were her boyfriend Lenny but was looking away from him while they were in the bed. The complainant asked the male why he didn’t use the key she gave him and he said he either lost it or left it at his father’s house.
The male began to touch the complainant’s breasts and complainant responded "Oh boy, you’re drunk and horny.” He then asked her to have sex with him and she told him to make it quick because she had to work in the morning. Complainant removed her clothing and was calling him Lenny. The male then took off his clothing and got on top of the complainant and inserted his penis into her vagina. They had intercourse for several minutes during which time com *999 plainant wasn’t looking at the male’s face. When the act was over, the male said, "Was that the best sex you ever had?” and "What are you going to tell Lenny?” Complainant got out of bed, turned the light on and saw that it was Lamont and not Lenny that she had sexual intercourse with. Complainant threw the defendant’s clothes out the door and defendant left. Shortly thereafter, complainant contacted the police.
On August 13, 1993 defendant was charged with sexual misconduct and arraigned; defendant pleaded not guilty and now moves to dismiss the charges.
Assuming arguendo that the complainant’s version of the facts is correct, the issue presented before this court is whether a female actually consents to sexual intercourse with a male who procures the female’s consent by impersonating the female’s boyfriend.
Penal Law § 130.20 must be read in conjunction with section 130.05 which provides the definition of lack of consent. Under the statute, lack of consent results from forcible compulsion or incapacity to consent. A person is incapable of consent when he or she is less than 17 years old or mentally defective or mentally incapacitated or physically helpless. Where the offense charged is sexual abuse, however, any circumstances in addition to forcible compulsion or incapacity to consent in which the victim does not expressly or impliedly acquiesce in the actor’s conduct may be considered as lack of consent.
The lack of consent which forms the basis of the charge against defendant is not claimed to have been by forcible compulsion or the complainant’s incapacity to consent. Rather, the lack of consent results from the complainant’s mistaken belief resulting from defendant’s alleged fraud that the body she made love with was that of her boyfriend.
At the outset it should be noted for defense counsel that the particular act committed in the present case is distinguishable from seduction. Seduction involves allurement, enticement or persuasion to overcome unwillingness or resistance. (People v Evans, 85 Mise 2d 1088.) In seduction, the consent is procured by flattery and deception. The distinguishing feature between seduction and the act at hand is the fact that in seduction the victim knows who she is having sex with. While it is true that this State’s public policy unfavorably views actions for seduction, that view does not apply to the present case which facts do not spell out seduction.
Nor is this case comparable to Mills v United States (164 *1000 US 644 [1897]) as defense counsel would suggest. Defense counsel cites the Mills case for the proposition that deceit cannot be used to replace elements required by the statute. However, in Mills the issue was whether the victim’s failure to physically resist intercourse amounted to consent where defendant was charged with rape. The Court held that where a woman possesses mental and physical powers and is not terrified by threats nor in a position that resistance would be useless, her failure to resist intercourse amounts to consent. Deceit was not at issue. The present case is readily distinguishable from the Mills case. Consequently, defendant’s conclusion that deceit cannot be used to replace elements required by the statute is erroneous.
The crime of sexual misconduct overlaps with the crime of rape. Sexual misconduct represents the higher degrees of rape and sodomy and it also represents the two lowest degrees of rape.
This court has been unable to discover any authority for the factual circumstances presented in this case where the charge is sexual misconduct. Even where the charge is rape in the classic situation where the woman is forced to submit to sexual intercourse, there is little authority. Truly, these facts present a novel issue.
In general, in the absence of a statute, where a woman is capable of consenting and does consent to sexual intercourse, a man is not guilty of rape even though he obtained the consent through fraud or surprise. (75 CJS, Rape, § 16, citing Whittaker v State, 50 Wis 518, 7 NW 431.) The reason is that in the traditional definition of the crime of rape, the sexual intercourse must have been achieved "by force”, or "forcibly”.
A few courts have indicated that consent to sexual intercourse may be vititated, and the crime committed where defendant achieved the sexual intercourse by impersonating the woman’s husband. The court in People v Bartow (1 Wheel Cr Cas 378 [1823]) indicated that force may not be necessary, that fraud might take its place. However, in a later case, Walter v People (50 Barb 144, 147, 1 Cow Cr Rep 344, 346 [1867]), the court refused to give that "loose statement” any consideration.
A number of States have enacted statutes which extend the traditional definition of rape to include sexual intercourse achieved by fraud or impersonation. For instance, in Arizona a former statute defined the crime of rape to include the *1001 situation: "Where the female submits under a belief that the person committing the act is her husband, and this belief is induced by any artifice, pretense or concealment practiced by the accused with intent to induce such belief.” (Former Ariz Rev Stat § 13-611.) In State v Navarro (90 Ariz 185, 367 P2d 227 [1961]), defendant was convicted of rape where he had sexual intercourse with the complainant as he awoke her from sleeping; defendant pretended to be her husband.
In North Carolina, a former statute provided punishment for "any person who shall have had carnal knowledge of any married woman by fraud in personating her husband.” (Former NC Code Gen Stat § 1103, L 1881, ch 89.)
Additionally, the Model Penal Code makes it a crime for a male to have sexual intercourse with a female when he knows that she submits because she mistakenly supposes that he is her husband. (Model Penal Code § 213.1 [2].)
It is a basic tenet of statutory law that where the Legislature fails to include a matter within the scope of an act, its exclusion was intended. McKinney’s Consolidated Laws of NY, Book 1, Statutes § 74 provides: "A court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit; and the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended.”
Another basic rule of statutory construction is that the courts should avoid judicial legislation. McKinney’s Consolidated Laws of NY, Book 1, Statutes § 73 provides: "The courts in construing statutes should avoid judicial legislation; they do not sit in review of the discretion of the Legislature or determine the expediency, wisdom, or propriety of its action on matters within its powers.”
Based upon these two basic premises, the court has no choice but to dismiss the charge of sexual misconduct against the defendant.
The Legislature defined lack of consent in Penal Law § 130.05 and intended to exclude cases of fraud or impersonation. Where the Legislature intended to extend the definition of lack of consent, it did. For instance, lack of consent as applied to the crime of sexual abuse is extended to "any circumstances * * * in which the victim does not expressly or impliedly acquiesce in the actor’s conduct.” (Penal Law § 130.05 [2] [c].)
*1002 For the charge of sexual misconduct, however, lack of consent has been defined by the Legislature and does not include the particular circumstances in the present case. Consequently, assuming that defendant did deceive the complainant into having sexual intercourse with him, defendant cannot be found guilty of sexual misconduct.
It should be emphasized that this decision is not concluding that the defendant did not do anything wrong if he did indeed deceive the complainant into having sexual intercourse with him through fraud. Instead, what this court is saying is that the District Attorney’s office has charged the defendant with the wrong crime. In other words, the allegations of fact contained in the accusatory instrument do not contain all of the elements which are required to find the defendant guilty of sexual misconduct (Penal Law § 130.20). The People may, if they wish, file another accusatory instrument charging the defendant with another crime that encompasses the defendant’s conduct.
Based upon the foregoing, defendant’s motion is granted and the information is hereby dismissed.