**UNITED STATES, Appellee**

v.

**Gerald W. TRAYLOR, Private First Class, U.S. Army, Appellant.**

No. 93–0387.
CMR 9102589.

U.S. Court of Military Appeals.

Argued Feb. 2, 1994.

Decided Sept. 16, 1994.

For Appellant: *Captain Teresa L. Norris* (argued); *Colonel Malcolm H. Squires, Jr., Lieutenant Colonel James H. Weise, Major Fran W. Walterhouse* (on brief); *Colonel Stephen D. Smith.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Richard A. Cefola, Major Donna L. Barlett* (on brief).

*Opinion of the Court*

GIERKE, Judge.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of rape, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. The approved sentence provides for a dishonorable discharge, confinement for 5 years, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence without opinion. This Court granted review of the following issue:

> WHETHER THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT A FINDING BEYOND A REASONABLE DOUBT THAT APPELLANT RAPED SPECIALIST [G].

We hold that the evidence is sufficient to support the conviction.

Appellant and Specialist G were assigned to the same squad, which had deployed to Saudi Arabia for Operation Desert Storm. They were acquainted but did not usually work together or socialize.

On January 5, 1991, at almost 3:00 a.m., Specialist G was awakened by Specialist Sly, who asked her to meet him outside. They boarded a vacant bus parked nearby, talked for 5–10 minutes in the rear of the bus, and

then began engaging in sexual intercourse. After a few minutes, they changed positions so that Specialist G had her knees on the edge of a seat and her head toward the side of the bus, with Specialist Sly behind her engaging in vaginal intercourse from the rear.

Specialist G testified that Specialist Sly "slipped out but immediately reentered" two-three times. She testified that "he slipped out one more time and I thought it was him reentering but something felt different this time." She turned her head and saw that appellant had entered her. She testified that she "was shocked ... mad, upset, and I just—all I said was, 'Hey, Traylor, what's going on?'" She testified that she "tried to pull away a little," but appellant "pulled me back."

Asked why she did not do more to stop appellant, Specialist G testified that she "didn't have very much room to move" and was afraid because she "thought that they might force me to stay there using physical violence." Asked if she "ever" consented to have intercourse with appellant, she responded, "Never."

Appellant contends that the evidence is insufficient as a matter of law to prove that his sexual intercourse with Specialist G was without her consent. *See* para. 45b(1)(c), Part IV, Manual for Courts–Martial, United States, 1984. He also argues that, assuming *arguendo* that there was sufficient proof of lack of consent, the prosecution did not prove that appellant's mistaken belief that Specialist G consented was not both honest and reasonable. *See* RCM 916(j), Manual, *supra;* *United States v. Taylor,* 26 MJ 127, 128 (CMA 1988) (honest and reasonable mistake of fact regarding victim's consent is defense to rape).

Our standard of review is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). On the issue of consent, the Manual for Courts–Martial provides: "If

there is actual consent, although obtained by fraud, the act is not rape...." Para. 45c(1)(b). "Actual consent" means consent not only to the act of intercourse, but also consent "based on the identity of the prospective partner." *United States v. Booker,* 25 MJ 114, 116 (CMA 1987). It is not necessary that a woman know the true identity of her sexual partner or know anything about him in order to consent, but she must "be agreeable to the penetration of her body by a particular *'membrum virile,'*." *Id.* at n. 2.

◾ We hold that the evidence is legally sufficient to prove that appellant's sexual intercourse with Specialist G was without her consent. Based on the evidence of record, a rational factfinder could have found that Specialist G was unaware of appellant's presence until he had already penetrated her body. The record supports a finding that, at the moment of penetration, Specialist G had not consented to intercourse with appellant. If she did not consent, the crime was completed as soon as appellant penetrated her. *See* para. 45c(1)(a) ("Any penetration, however slight, is sufficient to complete the offense."). *Cf. United States v. Robertson,* 33 CMR 828, 835 (AFBR) ("As it is the *penetration* of the female without her consent which makes the offense," her awareness of the continuation of the act has no effect on the accused's guilt.), *rev'd on other grounds,* 14 USCMA 328, 34 CMR 108 (1963).

◾ Appellant argues, however, that Specialist G's failure to resist after discovering that it was appellant and not Specialist Sly who had penetrated her amounts to retroactive consent. We find appellant's novel theory unsupported by legal authority, and we reject it. *See United States v. Robertson, supra* at 836 ("[I]f the circumstances are such that a penetration amounts to rape, no consent thereafter granted can expunge the offense."). *See also* 65 Am Jur 2d, Rape, § 7 ("After the offense has been completed by penetration, no submission or consent of the woman will avail the defendant. The ultimate consent of the woman does not have a retroactive effect by relation, and operate as

a condonation of a crime which has become complete . . . .").

■ Turning finally to appellant's claim of honest and reasonable mistake, we note that appellant did not claim an honest and reasonable mistake of fact at his court-martial. The theory of the defense was that Specialist G had consented. In any event, we are satisfied that the evidence is sufficient for a rational factfinder to conclude that appellant was not mistaken. His trickery belies his claim of honesty. His asserted belief that Specialist G would consent to sexual intercourse with anyone, without knowing their identity, was patently unreasonable. *See United States v. Booker*, 25 MJ at 116 ("[E]ven the most uninhibited people ordinarily make some assessment of a potential sex partner and exercise some modicum of discretion before consenting to sexual intercourse.").

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and CRAWFORD concur.

WISS, Judge (concurring in the result):

The majority reasons that appellant's theory of "consent" requires that Specialist G's "consent" be viewed as retroactive to the instant of his entry into her. I agree with the majority that, where the purported "consent" *truly* would have to be *retroactive*, it would not transform what was rape into

something else. *See* F. Bailey and H. Rothblatt, *Crimes of Violence: Rape and Other Sex Crimes* § 433 at 279 (1973) ("After the offense has been committed by penetration, no submission or consent given by the woman will avail the defendant."). An example would be an instance in which a woman—knowing that she is being penetrated and knowing who is her penetrator—resists but, for some reason, subsequently consents.

Retroactivity, however, is not what appellant's theory really is about. Instead, notwithstanding a possible contrary reading of *United States v. Booker*, 25 MJ 114 (CMA 1987), it is arguable that appellant's behind-the-back maneuver was not rape at all initially because *the act of intercourse itself* was not with force and without Specialist G's consent.* *See* Art. 120, Uniform Code of Military Justice, 10 USC § 920.

Instead of fully analyzing and resolving this very complex question as the majority does, I prefer to wait until such time as it will be determinative of an appeal. Here, it is not, for application of it simply does not fit the facts of this case. The question before this Court is the legal sufficiency of the evidence, *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); and I am satisfied that the evidence marginally is adequate from which a rational factfinder could have found force and lack of consent beyond a reasonable doubt, based on Specialist G's testimony of what she said to

---

* *See* R. Perkins and R. Boyce, *Criminal Law* 214–16 (3d ed. 1982); *compare* § 434 *with* § 435 of F. Bailey and H. Rothblatt, *Crimes of Violence: Rape and Other Sex Crimes* 279 (1973). Perkins, *supra* at 216, suggests that, where the woman consents to the act of sexual intercourse itself but has been misled as to the identity of her lover, the fraud is "in the inducement," not "in the *factum*," and thus is not rape. Bailey and Rothblatt, *supra* at 279–80, apparently agree as to statutes that embody the common-law definition of rape as requiring force and lack of consent, such as ours; they distinguish such a case from one in which the woman physically or mentally is incapable of consenting to the sexual act itself, where lack of consent therefore is assumed and the requisite force may be found in the act of penetration. Although this issue is one that apparently arises only quite infrequently in the courts, interestingly an opinion on point was

reported out of the New York state court system just earlier this year which reflects at least the lack of absurdity, and possibly the merit, in appellant's position. *See State v. Hough*, 159 Misc.2d 997, 607 N.Y.S.2d 884 (Dist. Ct., Nassau County, 1st. Dist., Crim. Term—Jan. 13, 1994).

Judge Cox's opinion in *United States v. Booker*, 25 MJ 114, 116 (CMA 1987), appears to limit fraud in the inducement to *verbal* trickery, apparently to the exclusion of physical trickery. Instead, he includes within fraud in the *factum* "both the nature of the act and some knowledge of the identity of the participant." The separate opinion of then-Chief Judge Everett seems to disagree, however; and the separate "concurring" opinion of then-Judge Sullivan expressly notes "reservations concerning what constitutes 'fraud in the factum.'" *Id.* at 119. Accordingly, I do not consider that the Court in *Booker* resolved this subtly complex issue.

appellant when she turned around and saw who it was and upon her testimony that she immediately began to pull away but was pulled back by appellant. Upon this rationale, I agree with the disposition of this appeal ordered by the majority.