UNITED STATES, Appellee,

v.

Jerrel W. HUGHES, Jr., Sergeant,
U.S. Army, Appellant.

No. 97–0142.
Crim.App. No. 9401652.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 16, 1997.

Decided July 13, 1998.

DISMISSAL OF THE SPECIFICATION OF CHARGE II AND CHARGE II (RAPE) FOR FAILURE TO STATE AN OFFENSE WHEN THE MILITARY JUDGE MISINTERPRETED THE LAW ON FRAUD IN THE *FACTUM.*

II

WHETHER SPECIFICATION 1 OF CHARGE I (VIOLATION OF PARAGRAPH 7, 2D INFANTRY DIVISION REGULATION 27–5, DATED 7 MARCH 1994) FAILS TO STATE AN OFFENSE VIS–A–VIS APPELLANT AND THEREFORE MUST BE DISMISSED.

We resolve Issue I against appellant and Issue II in his favor.

For Appellant: *Lida Stout Haskett* (argued); *Major Leslie A. Nepper* (on brief); *Captain John M. Head.*

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel Joseph E. Ross* and *Lieutenant Colonel Frederic L. Borch* (on brief).

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of violating a lawful general regulation, rape, sodomy, burglary, and adultery, in violation of Articles 92, 120, 125, 129, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 920, 925, 929, and 934, respectively. The adjudged and approved sentence provides for a dishonorable discharge, confinement for 8 years, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence without opinion.

This Court granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED BY DENYING TRIAL DEFENSE COUNSEL'S MOTION FOR

*Factual Background*

Private First Class (PFC) B had been drinking and was asleep in her barracks room at Camp Hovey, Korea. She left the door unlocked so that her boyfriend, Sergeant (SGT) R, could enter. At some time during the night, appellant entered her barracks room and had intercourse with PFC B. She was not fully awake and called out SGT R's name several times during the intercourse. After the intercourse was completed, PFC B got out of bed, went to the bathroom, and then noticed that appellant and not SGT R was sitting on her bunk.

Both appellant and PFC B were assigned to the 2d Infantry Division (2ID). Appellant was charged with violating paragraph 7 of 2ID Regulation 27–5 "by wrongfully visiting the quarters of [PFC B] between the hours of 2400 and 0530 without the advanced written permission of any person authorized to grant said permission." The introductory language of paragraph 7 provides that "[t]he hosting soldier is responsible for complying with the requirements and restrictions described below." Paragraph 7b provides that, "[b]etween 2400 and 0530 hours, individuals may visit soldiers' quarters with advance written permission." The paragraph then specifies which commanders are empowered to grant written permission.

Issue I is miscast as pertaining to a "motion for dismissal." It actually arose from a defense motion for a finding of not guilty. *See* RCM 917, Manual for Courts–Martial, United States (1995 ed.). At trial, defense counsel asserted that the prosecution had failed to produce evidence that the act of intercourse was by force and without the consent of PFC B. *See* para. 45c(1)(b), Part IV, Manual, *supra.* Trial counsel argued that PFC B had not consented to intercourse with appellant. The military judge denied the motion.

### Discussion: Issue I

The legal test for ruling on a motion for a finding of not guilty is set out in RCM 917(d), which provides in pertinent part as follows:

> A motion for a finding of not guilty shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged. The evidence shall be viewed in the light most favorable to the prosecution, without an evaluation of the credibility of witnesses.

■ Where, as in this case, the question is whether the military judge correctly understood and applied a legal concept, we review the ruling de novo. *See United States v. Sullivan,* 42 MJ 360, 363 (1995); S. Childress & M. Davis, 2 *Federal Standards of Review,* § 7.05 (2d ed.1992).

■ Article 120 defines rape as "an act of sexual intercourse, by force and without consent." Paragraph 45c(1)(b), Part IV, Manual, *supra,* provides that, "[i]f there is actual consent, although obtained by fraud, the act is not rape." The distinction involved in this case is between fraud in the inducement and fraud in the *factum.* The former applies to situations where consent is obtained by misrepresentations ("No, I'm not married."; "I'll respect you in the morning."); the latter applies to misrepresentations about the nature of the act itself. *See United States v. Booker,* 25 MJ 114, 116 (CMA 1987).

Before this Court appellant asserts that the military judge incorrectly applied the concept of fraud in the *factum* when he denied the motion for a finding of not guilty. Appellant relies on *People v. Hough,* 159 Misc.2d 997, 607 N.Y.S.2d 884 (Dist. Ct., Nassau County, 1994), for the proposition that sexual intercourse is not rape if the woman consents to having intercourse, even if the man fraudulently leads her to believe that he is someone else. The Government relies on this Court's opinions in *United States v. Traylor,* 40 MJ 248 (CMA 1994), and *United States v. Booker, supra,* for the proposition that PFC B did not consent to intercourse with appellant and, thus, her purported consent was invalid because it was obtained by fraud in the *factum.*

In *Booker,* then-Judge Cox recognized that "[t]here are differences of opinion as to whether 'consent' relates only to the act or also to the actor." 25 MJ at 116. Writing the lead opinion in a plurality decision, Judge Cox opined that actual consent means that "a woman must be agreeable to the penetration of her body by a particular '*membrum virile,*'" *i.e.,* a particular male sex organ. *Id.* at n. 2, citing Stedman's Medical Dictionary 1049 (4th Unabridged Lawyers ed.1978 reprint). Although the two concurring judges in *Booker* found it unnecessary to decide whether Judge Cox's view was correct, in *Traylor* his view was adopted by a 4–1 majority of this Court. 40 MJ at 249.

Appellant argues that *Traylor* is distinguishable from this case because, in *Traylor,* the victim protested as soon as she realized that the second male had penetrated her. We reject appellant's argument. In *Traylor* we held that the victim's retroactive consent or lack thereof "has no effect on the accused's guilt" because the offense was completed at the moment of penetration. *Id.,* citing *United States v. Robertson,* 33 CMR 828, 835 (AFBR 1963).

Applying the principles articulated in *Traylor* and *Booker,* we hold that there was sufficient evidence of record to show that PFC B did not consent to being penetrated by appellant. Accordingly, we hold that the military judge did not err by denying the

motion for a finding of not guilty. To the extent that *Hough* is inconsistent with this opinion or our earlier opinions, we decline to follow it.

*Discussion: Issue II*

■ Appellant was prosecuted for violating paragraph 7 of 2ID Regulation 27–5 by visiting PFC B's room without the required permission. Appellant now argues he was a visitor and not a host, and that 2ID Regulation 27–5 applies to the host, not the visitor. The Government argues that, in the context of the purpose of the regulation, it must be construed to apply to both hosts and visitors. In the alternative, the Government argues that appellant was guilty of aiding and abetting a violation of the regulation.

■ Any ambiguity in construing a punitive regulation should be resolved in appellant's favor. *See United States v. Williams*, 29 MJ 112, 115 (CMA 1989) (regulations that are the basis for criminal sanctions are strictly construed.) The introductory language of paragraph 7 clearly places the responsibility for compliance on hosts. We hold that the regulation did not apply to appellant. We reject the Government's argument that appellant was guilty as an aider and abettor. He was a burglar, not a co-actor. Accordingly, we must set aside appellant's conviction of violating a general regulation (specification 1 of Charge I).

■ Notwithstanding appellant's improper conviction of specification 1 of Charge I, we hold that he was not prejudiced in sentencing. The same conduct underlying the regulatory violation was also the basis for his conviction of burglary. This was a bench trial. The military judge treated the regulatory violation and the burglary as a single offense for sentencing. In addition to his conviction of raping PFC B, he was also convicted of burglary with intent to rape PFC B's roommate 3 months after raping PFC B and of committing oral sodomy on PFC B 4 months later, under similar circumstances where she was expecting a visit from her boyfriend but was instead violated by appellant. Under the circumstances, we conclude that there was no reasonable likelihood of prejudice on sentencing. Art. 59(a), UCMJ, 10 USC § 859(a).

*Decision*

The decision of the United States Army Court of Criminal Appeals is reversed as to specification 1 of Charge I. The finding of guilty thereon is set aside, and specification 1 of Charge I is dismissed. In all other respects, the decision of the court below is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

EFFRON, Judge (concurring in part and in the result):

This case involves a male soldier—appellant—who entered a barracks room occupied by two sleeping female soldiers late at night, without knocking or obtaining their permission to enter. He then initiated sexual foreplay with one of the sleeping females, a person with whom he had no previous professional, personal, or sexual relationship. The female called out the name of her boyfriend—SGT R—and appellant then initiated an act of sexual intercourse. Almost immediately after the act, the female viewed appellant and realized that he was not her boyfriend. According to her roommate, she became upset and ordered appellant out of the room. He responded by saying, "I'm so sorry. I will never let it happen again."

The military judge, in rejecting appellant's motion for a finding of not guilty, found that—

> a reasonable factfinder could find all the essential elements beyond a reasonable doubt ... [including] evidence of the considerable intoxication ... [which] resulted in a sleep such that it can at least be argued that [the female soldier] was incapable of giving knowing, intelligent, and conscious consent at the time of sexual intercourse.

Paragraph 45c(1)(b), Part IV, Manual for Courts–Martial, United States (1995 ed.), provides that, where there is "actual consent, although obtained by fraud, the act is not rape, but if to the accused's knowledge the victim is ... unconscious to an extent ren-

dering ... her incapable of giving consent, the act is rape." The court-martial had sufficient evidence to determine that appellant knew that the female soldier did not give knowing, intelligent, and conscious consent, particularly in view of his late night entry into a female barracks room followed by initiation of sexual activity with a sleeping female with whom he had no past sexual relationship and no past personal relationship that would indicate that such sexual activity would be welcomed.

In this case, the foregoing evidence provides an appropriate basis to affirm the conviction on the basis of legal sufficiency under the test set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and the test for ruling on a motion for a finding of not guilty under RCM 917(d), Manual, *supra*. I am not prepared to concur in the majority opinion with respect to Issue I, however, in view of the majority's reliance on dicta in *United States v. Traylor*, 40 MJ 248 (CMA 1994), and *United States v. Booker*, 25 MJ 114 (CMA 1987). In the absence of a specific case or controversy, I have reservations about such dicta to the extent that it would suggest that a person could be convicted of rape in circumstances where the evidence, viewed in the light most favorable to the Government, would demonstrate that a person reasonably believed there was consent. *See* para. 45c(1)(b). Given the wide variety of male-female relationships and interactions under which such an issue might arise, I would caution against any broad pronouncements until we are faced with a concrete set of facts. *See Traylor, supra* at 250–51 (Wiss, J., concurring in the result).

SULLIVAN, Judge (concurring in the result in part and dissenting in part):

I concur in the result reached by the majority but not with much of its reasoning. To me and, perhaps more importantly, to the victim in this case, this case is a rape case, not a fraud case.* To be successful in a rape case, as an affirmative defense, the defense of "consent to intercourse" must show that the victim consented not only to the act of intercourse but also to the particular person performing the act. In *United States v. Traylor*, 40 MJ 248 (CMA 1994), there was no consent to the second man performing intercourse with the victim. Therefore, the rape conviction was affirmed. In *United States v. Booker*, 25 MJ 114 (CMA 1987), there was no consent at all because the victim was drunk. Therefore, the conviction was affirmed. In the case at bar, the evidence showed consent to the act by the victim but no consent to the person performing the act. Therefore, the defense of "consent" in this case must fail, and I agree with affirming the rape conviction under the circumstances of this case. *See United States v. Traylor, supra*.

As for Issue II, I cannot join the majority in stretching the regulation to reverse SGT Hughes' conviction. Second Infantry Division (2ID) Regulation 27–5, on housing quarters, is quite clear:

### INDIVIDUAL CONDUCT

\* \* \*

1. **PURPOSE.** *To establish and outline prohibited and regulated conduct of personnel serving or employed with the 2d Infantry Division (2ID).* This regulation *also* assigns responsibilities and procedures to follow in accomplishing the directives contained in this regulation.

\* \* \*

4. Specifically, the trial participants were confused between footnote 2 in *Booker* wherein Judge Cox states that it is irrelevant whether a woman knows the true identity of the man with whom she is having intercourse, and Judge Cox's language that fraud as to identity is fraud in the *factum* sufficient to vitiate mistaken consent given (R. 256–57).

---

* The majority opinion ignores appellant's argument on appeal and the record in this case, which shows that *United States v. Booker*, 25 MJ 114 (CMA 1987), was confusing to the trial judge. More to the point, appellant argued in his Final Brief at page 5:

> After much confusion and declarations from the military judge that the language in *United States v. Booker* was not a model of clarity, being self-contradictory4....

**3. APPLICABILITY.** *This regulation sets forth standards of conduct for and prohibits certain activities by military or civilian persons assigned or attached to, employed by, or otherwise serving with the 2d Infantry Division* or falling within the general court-martial area jurisdiction of the Commander, 2d Infantry Division, including DOD civilian personnel and family members of military and DOD civilian personnel. *Persons subject to the Uniform Code of Military Justice (UCMJ) who violate or fail to comply with paragraphs 6 through 19 of this regulation are subject to punishment under Article 92 of the UCMJ, as well as other adverse actions.* Personnel not subject to the UCMJ who fail to comply with the provisions of this regulation may be subject to adverse administrative actions as authorized by applicable law and regulation.

\* \* \*

**7. VISITATION IN QUARTERS.** Visitation by soldiers, DOD civilian employees, and family members is authorized as set forth in this paragraph in soldiers' and employees' quarters, including bachelor officer quarters (BOQ), bachelor enlisted quarters (BEQ), troop billeting areas, or other *sleeping areas assigned to a soldier* or employee. For purposes of this paragraph, "family members" are spouses, parents, children, siblings or minors for whom application has been made for adoption. The hosting soldier is responsible for complying with the requirements and restrictions described below.

a. Between 0530 and 2400 hours, individuals may visit soldiers' quarters subject to reasonable restrictions at the discretion of the company-level commander responsible for the facility, or any superior commander, *to ensure privacy of those who reside in the facility.*

b. *Between 2400 and 0530 hours, individuals may only visit soldiers' quarters with advance written permission.* The company-level commander responsible for the facility, the soldier's commander, or any superior commander, may grant permission for periods not to exceed three (3) days; the battalion commander, or any superior commander, may grant permission for no more than thirty (30) days. The commander granting permission shall determine which quarters within his area have adequate sleeping and latrine facilities for visitors, and shall, if necessary, designate latrine facilities within such areas for opposite sex visitors.

(Emphasis added.)

In this case, SGT Hughes, without permission from the victim or any "commander" specified in the regulation, entered the victim's sleeping area at night and raped her. The 2ID regulation was clearly issued as a punitive regulation and was promulgated, in part, to protect soldiers and "to ensure privacy of those who reside in the facility." A soldier does not have much privacy in the Army, but soldiers should be able to expect that regulations protecting the privacy of their sleeping areas will be enforced. The "host" theory which the majority uses to bend this regulation in favor of the convicted rapist must sound very hollow to the rape victim. She was not "hosting" SGT Hughes. She was being raped by him. Accordingly, under the plain language of the regulation, I would affirm the conviction of SGT Hughes for violation of the 2ID regulation.