# IN THE COURT OF APPEALS OF IOWA

No. 16-0134
Filed June 7, 2017

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**MICHAEL CORY KELSO-CHRISTY,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Marion County, Gregory A. Hulse, Judge.

A defendant appeals his conviction for burglary in the second degree, challenging the sufficiency of the evidence. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**SCOTT, Senior Judge.**

Michael Kelso-Christy appeals his conviction for second-degree burglary, in violation of Iowa Code section 713.5 (2015). Kelso-Christy asserts there was insufficient evidence to support his conviction; specifically, he asserts his impersonation of another person did not satisfy the element of intent to commit sexual abuse because the sex act he intended when he entered the victim's home was a consensual sex act. Because Kelso-Christy's impersonation of another person who was known to the victim amounts to fraud in fact, we conclude the victim's consent to the sex act was vitiated and Kelso-Christy's conviction is supported by sufficient evidence.

Our review of a challenge to the sufficiency of the evidence is for the correction of errors at law. *State v. Shorter*, 893 N.W.2d 65, 70 (Iowa 2017).

> The district court's finding of guilt is binding upon us unless we find there was not substantial evidence in the record to support such a finding. In determining whether there was substantial evidence, we review the record evidence in the light most favorable to the State. Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

*State v. Dalton*, 674 N.W.2d 111, 116 (Iowa 2004) (citation omitted).

Kelso-Christy consented to a trial on the minutes of evidence. Those minutes provided the victim would testify:

> [S]he was contacted by Facebook by an individual who represented that he was [a former classmate]. She will testify that she knew [the former classmate] from high school. She will testify that she engaged in numerous Facebook [messages] and texts with this person. She will testify that over time these messages turned sexual in nature. She will testify that she agreed to have sex with an individual she believed was [the former classmate]. She will testify that the nature of the sexual encounter involved blindfolding herself and being handcuffed by who she believed was [the former

classmate]. She will testify that she invited this individual into her home and that he restrained her, had sexual intercourse, and abruptly left saying he had to go. This witness will testify that she consented to having sex with [the former classmate]. This witness will testify that she did not know that the defendant was impersonating [the former classmate], and that she did not consent to having sex on that date with anyone other than [the former classmate]. She will testify that she began to become suspicious when the person she had been communicating with stopped responding to her texts. She will also indicate that the Facebook page was no longer active. This witness will testify that she observed a condom wrapper which she moved to her bathroom trash can. This witness will testify that all of the events occurred in Marion County, Iowa, on April 26, 2015. She will testify she notified the police on April 27, 2015. She will testify that she did not consent to the defendant entering her home and did not consent to having sex with him.

The minutes provided that Kelso-Christy's fingerprint was on the condom wrapper the victim found in her bedroom. In addition, minutes related to the former classmate of the victim stated he would testify:

[H]e has, on Facebook, an account. He will testify that he has not created a second account in his name. This witness will testify that he did not engage the victim in conversation at any time during this investigation or prior to it. He will testify that he has not been to the victim's home. He will testify that he did not have sex with the victim. He will testify he was made aware of this investigation by the Marion County Sheriff's office. This witness will testify that after being made aware of the investigation, he was contacted by other men who were angry that he was soliciting their wives and girlfriends for sex.

The district court articulated the elements of second-degree burglary in this case as:

1. On or about April 26, 2015, defendant entered the residence of [the victim];
2. The residence was an occupied structure, located in Marion County, Iowa;
3. Defendant did not have permission or authority to enter the residence;
4. The residence was not open to the public;

      5. Defendant entered the residence with the specific intent to commit sexual abuse;

      6. One or more persons were present in or upon the occupied structure.

Based on its review of the minutes, the district court found:

> That defendant did enter [the victim's] residence on April 26, 2015. That residence was an occupied structure. Defendant did not have authority or permission to enter that residence. [The victim] had given permission or authority for the person defendant was impersonating to enter the residence, but she did not give permission or authority to defendant to enter the residence. [The victim] was in the residence at the time defendant entered. The residence was not open to the public. Defendant entered the residence with the specific intent to commit sexual abuse.

Kelso-Christy's challenge on appeal centers on the district court's finding he had the intent to commit sexual abuse when he entered the occupied structure. Instead, he asserts the evidence is only sufficient to prove that when he entered the victim's residence he had the intent to have a consensual sexual encounter with the victim while he was impersonating another person and that the victim consented to the sexual encounter believing that he was the other person. He asserts, because consent to sex by imitating another person is not sexual abuse, the evidence does not support his conviction.

Sexual abuse is defined in the code to mean, in part, a sex act "done by force or against the will of the other." Iowa Code § 709.1(1). When determining whether a sex act is done by force or against the will of another, the code advises that it is not necessary to show physical resistance by the victim but "the circumstances surrounding the commission of the act may be considered in determining whether or not the act was done by force or against the will of the other." *Id.* § 709.5. The Iowa Supreme Court has found that fraud, in certain

circumstances, can vitiate consent. *See State v. Bolsinger*, 709 N.W.2d 560, 564–65 (Iowa 2006). The supreme court was careful to distinguish between "fraud in fact" and "fraud in the inducement." *Id.* at 564. "If an act is done that is different from the act the defendant said he would perform, this is fraud in fact. If the act is done as the defendant stated it would be, but it is for some collateral or ulterior purpose, this is fraud in the inducement." *Id.* Only fraud in fact will negate consent. *Id.*

Thus, we must answer the question of whether deception regarding one's identity, specifically impersonating another person known to the victim, is fraud in fact or fraud in the inducement. While there is disagreement regarding the effect of a concealed identity on the validity of a person's consent to a sexual act,[1] we conclude the better and more contemporary view is that the identity of one's sexual partner is material and essential to a person's decision to consent to a sexual encounter, and concealment and misrepresentation regarding that identity is thus fraud in fact. The victim in this case consented to a sexual encounter with a specific former classmate. Instead, she experienced a different act—a sexual encounter with an entirely different person. This was not the act to which she consented. Kelso-Christy's concealment of his identity was not a "collateral or ulterior purpose."

> The better view is that the "factum" involves both the nature of the act and some knowledge of the identity of the participant. . . . Further, while it is arguable that there may be people who are willing to hop into bed with absolutely anyone, we take it that even the most uninhibited people ordinarily make some assessment of a

---

[1] J. Richard Broughton, *The Criminalization of Consensual Adult Sex After* Lawrence, 28 Notre Dame J.L. Ethics & Pub. Pol'y 125, 133–41 (2014) (articulating the development and evolution of the criminalization of sex by deception).

potential sex partner and exercise some modicum of discretion before consenting to sexual intercourse.  Thus, consent to the act is based on the identity of the prospective partner.

This is not to suggest that knowing the partner's true name or anything about him or her is necessary to consent.  The use of a false name may well amount to fraud in the inducement, but it does not alone vitiate consent. . . .  Where there is fraud in the factum, there is no actual consent.

*United States v. Booker*, 25 M.J. 114, 116 (C.M.A. 1987).

Our supreme court has recognized a sexual act is more than just the physical act but is an act done with a specific person.  In addressing our state's rape shield statute, the supreme court stated: "We have never adopted the principle that a victim's consent to intercourse with one man implies her consent in the case of another, and we reject it now."  *State v. Ball*, 262 N.W.2d 278, 280 (Iowa 1978).

While some people tell a multitude of lies in order to induce another to engage in sexual activity, Kelso-Christy did more than just tell a lie; he impersonated a specific person, known to the victim, with the knowledge and intent that the impersonation would cause the victim to consent to sexual activity. He then took steps to ensure his identity would remain secret until after the sexual act was completed—blindfolding and restraining the victim and leaving the victim's residence before she could ascertain his true identity.  Based on the unique facts of this case, we conclude sufficient evidence exists to conclude Kelso-Christy had the intent to commit sexual abuse by deception when he entered the victim's residence.  We thus affirm his conviction and sentence.

**AFFIRMED.**