THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTER J. BORAK, Defendant-Appellant.

(No. 72-244;

Second District—August 23, 1973.

Earl B. Williams, of Williams & Slaughter, of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton, (Malcolm F. Smith, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant, Walter J. Borak, was convicted in a bench trial of rape and deviate sexual assault, and was sentenced to 5 to 8 years on each charge, the sentences to run concurrently.

On appeal, defendant contends that the State did not prove beyond a reasonable doubt that he committed the acts complained of, or that the acts were committed by force or threat of force, or against the will of the complainant; and that he was denied a fair trial because a courtroom spectator allegedly informed the excluded witnesses of the testimony being given.

The prosecutrix, a married woman 18 years of age at the time of the acts in question, testified that defendant, a doctor, conducted gynecological examinations on her on two occasions. During the examinations, she laid on an examining table, unclothed from the waist down, with her hips at the end of the table and her feet in stirrups about a foot higher than the table and a foot out from it on either side. She had never before been examined internally.

She testified that during the first examination, conducted on September 22, 1970, defendant asked extremely personal questions about the details of her sexual relationship with her husband, and conducted intimate manipulations of her body for which he gave medical explanations. Defendant breathed heavily, but was not flushed. Defendant ceased his

manipulations when she told him they were hurting her. After leaving, prosecutrix did not tell anyone what took place at this examination.

During the second examination, conducted two days after the first, defendant again asked personal questions and manipulated her body. Prosecutrix did not wear a brassiere to this examination. While manipulating his finger in her vagina, defendant asked, "Why don't you come?" "Why don't you come with your husband?" Prosecutrix noticed that he was breathing heavy and was flushed. She said she couldn't get off the table because he was standing right there, and she didn't ask him to let her up because she was scared and thought he was sexually stimulated. She closed her eyes, as instructed, and felt defendant's tongue on her vaginal area. She got up on her elbows, but laid back down and closed her eyes when defendant told her to in a voice that was not loud or soft, but "[k]ind of * * * commanding." About thirty seconds later, she felt his organ enter hers, at which time she sat up quickly and got dressed. After a brief conversation about what she owed defendant, she left. On arriving home, she related the incident to her husband, and the police were called.

Prosecutrix testified that she was not tied down or restrained while on the examining table, and could remove her feet from the stirrups. She also stated that defendant had no weapon and never threatened her or used force against her, and that she never cried out for help or used force against defendant.

Prosecutrix's husband testified that when his wife arrived home from the second examination she was crying and broken up, and that she told him what had occurred. He then called the police and her father.

Sgt. Ronald Garbers of the Lombard Police Department testified for the State that he received a call from the prosecutrix on the evening of September 24, 1970, and could hear that she was sobbing. He stated that when he went to her house, she told him of both acts allegedly committed by defendant.

Gertrude Borak, defendant's wife, testified for the defense that she was working in defendant's office during the prosecutrix's second examination and that she once entered the room and was seen by prosecutrix. She said after returning to her office, she did not hear voices coming from the examining room. She was not in the examining room while the examination was being conducted, and she did not see the prosecutrix leave.

■■ Defendant does not in his brief contest the act of intercourse on which the rape charge is based, or the act of deviate sexual conduct (touching her organ with his mouth; see Ill. Rev. Stat. 1969, ch. 38, par. 11—2) forming the basis of the deviate sexual assault charge. He does,

however, raise this issue in oral argument, and we have therefore considered it. We conclude that prosecutrix's testimony, the credibility of which is for the trial court, and the corroboration provided by her prompt complaint (*People v. Murphy* (1970), 124 Ill.App.2d 71, 75), are sufficient to establish that the acts complained of were committed.

■■ The more difficult questions before us are whether the act of intercourse was performed "by force and against her will", as required to sustain a rape conviction (Ill. Rev. Stat. 1969, ch. 38, par. 11—1(a)), and whether the act of deviate sexual conduct was "by force or threat of force", as required to constitute deviate sexual assault (Ill. Rev. Stat. 1969, ch. 38, par. 11—3(a)). The committee comments to section 11—3, dealing with deviate sexual assault, state that the force required under that section is generally the equivalent of the force required in rape. S.H.A., ch. 38, par. 11—3, p. 369.

■■ The general rules as to the degree of force required under our rape statute are stated in *People v. Faulisi* (1962), 25 Ill.2d 457, 461. It is stated that the degree of force exerted by the defendant and the amount of resistance on the part of the complaining witness are matters that depend on the facts of the particular case; that resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female as where the assailant is armed with a deadly weapon, and that proof of physical force is unnecessary if the prosecuting witness was paralyzed by fear or overcome by superior strength of her attacker; that it is, however, fundamental that there must be evidence to show that the act was committed by force and against the will of the female, and if she has the use of her faculties and physical powers, the evidence must show such resistance as will demonstrate that the act was against her will. See also *People v. Taylor* (1971), 48 Ill.2d 91, 98.

In the case before us, due to the nature of the examination being conducted, defendant was allegedly able to accomplish the acts by surprise, and the necessity for force, as the term is generally used in rape and deviate sexual assault cases, was negated. The question then becomes whether some theory of implied or statutory force can be employed. See Anno 70 A.L.R.2d 824, and later case service.

The State has cited *Commonwealth v. Morgan* (Pa. 1948), 56 A.2d 275, r.o.g., 58 A.2d 330, and *People v. Minkowski* (Cal.App. (1962), 23 Cal.Rptr. 92. In both of these cases, doctors penetrating patients by surprise were found guilty of rape. However, in *Morgan*, no analysis of the force required was made, and in *Minkowski* the statute, unlike ours, provided that rape is committed "where the female is at the time unconscious of the nature of the act, and this is known to the accused."

*State v. Atkins* (Mo. 1926), 292 S.W. 422 is closely analagous here. There, during a vaginal examination, the woman closed her eyes and covered them with her arms because of embarrassment. She then felt the doctor's sex organ enter hers, whereupon she jumped out of the chair and pushed him away. The court agreed with defendant that no more physical force was employed by him than is necessarily incident to such an act when done with consent. It noted, however, that a previous Missouri case involving a sleeping woman had held that where the woman does not consent, no more force is required than the force incident to the act, and stated:

> "If it is rape under our statutes for a man to have illicit sexual connection with a woman while she is asleep, and incapable of consenting, when no more force is used than is necessary to effect penetration with the consent of the woman, we are unable to see why it is not also rape for a man to have improper sexual connection with a woman by accomplishing penetration through surprise, when she is awake, but utterly unaware of his intention in that regard. In such case the woman is incapable of consenting, because she has no opportunity to give consent any more than has a sleeping woman.
>
> It would indeed be a reproach upon our statute if a physician, under pretense that it was necessary for a woman patient to submit to examination of her sexual organs in order to assist him in the diagnosis of her ailment, and under the pretense that it was necessary for her to expose her person and to assume a position which, at the same time, incidently afforded ready opportunity for sexual attack, could safely take advantage of her position and make an unexpected and uninvited sexual invasion of her person. If, under such circumstances, a physician takes such an unconscionable advantage of the woman's position, and, to her complete surprise, and without the slightest ground to assume that he has her consent, violates the trust and confidence imposed in him and perverts her position and his opportunity into an uninvited and cowardly attempt to gratify his lust, the force merely incident to penetration should be deemed sufficient force within the meaning of our rape statute. * * *" (p. 426)

■■ The Illinois rape statute recognizes that, in certain situations, force can be present where no actual violence is either committed or threatened. It provides that the phrase "by force and against her will" includes, but is not limited to:

"(1) Where the female is unconscious; or

(2) Where the female is so mentally deranged or deficient that

she cannot give effective consent to intercourse." Ill. Rev. Stat. 1969, ch. 38, par. 11—1(a).

While no Illinois case has dealt with the force required for allegedly unexpected acts performed by a doctor upon a patient to constitute rape or deviate sexual assault, the issue of force has been discussed in cases involving acts performed upon children under the age of consent.

In *People v. Riley* (1967), 84 Ill.App.2d 296, the court affirmed a conviction of rape for a nonviolent act of intercourse with a seven-year-old girl, saying that force was inherent in the act. In *People v. Garcia* (1971), 3 Ill.App.3d 365, 369, the court stated that proof of force was unnecessary to establish deviate sexual assault upon a fifteen-month-old child, because the child was incapable of consenting or resisting. However, in the recent case of *People v. Mueller* (1973), 54 Ill.2d 189, our Supreme Court reversed a conviction for deviate sexual assault upon a seven-year-old girl, holding that proof of actual force or threat of force was required. The court rejected the state's argument that a threat of force was implicit due to the disparity of ages and the victim's legal inability to consent due to her age, and quoted the committee comments to section 11—3 to the effect that the statutory scheme contains three approaches to deviate sexual activity; i.e., compelling another to engage in a deviate sexual act (sec. 11—3), similar conduct involving children (secs. 11—4 and 11—5); and public acts of deviate sexual conduct (sec. 11—9. S.H.A., ch. 38, par. 11—3, p. 369.) The court then stated that this plan reserves imposition of the strict penalty provided in the deviate sexual assault section, as contrasted to the lessened penalty or affirmative defenses provided in the sections relating to acts upon children, to situations involving actual or threatened force.

■■■ In contrast, in the case before us and other cases not involving children, the only section in the statutory scheme which deals with non-public acts of deviate sexual conduct is section 11—3 (deviate sexual assault). A requirement of actual force would, in cases of unexpected sexual attacks, relegate the state to a prosecution for the misdemeanor of battery. It seems clear that section 11—1 recognizes that rape can occur where no actual force is used. In light of the committee comment stating that the force requirements contained in the rape and deviate sexual assault statutes are intended to be generally equivalent, we cannot conclude that an unexpected act of intercourse is punishable as rape, but that an act of deviate sexual conduct performed under the same circumstances is punishable only as battery. We therefore conclude that in cases not involving children, "force" in the statutory sense, is present when the victim is incapable of consenting to the sexual act involved because she has been given no opportunity to consent. Force is thus

implied when the rape or deviate sexual acts proscribed by statute are accomplished under the pretext of medical treatment when the victim is surprised, and unaware of the intention involved.

In the case before us, even if the prosecutrix realized that defendant's questions were improper, this would not in itself indicate what was to follow. While defendant's appearance indicated to prosecutrix that he was sexually aroused, he had not performed any actions which she knew to be improper, and prosecutrix was not put on notice that defendant would perform an overt, deviate act upon her body. Defendant's act of deviate sexual conduct was, in the language of *Atkins* ((Mo. 1926), 292 S.W. 422), "through surprise", with prosecutrix being "utterly unaware of his intention in that regard." Prosecutrix was therefore incapable of consenting to the act, and "statutory" force was present.

■■ However, the contrary is true as to the act of intercourse. When defendant put his mouth on prosecutrix's organ, she became aware of his intentions, and nothing he did thereafter could come as a surprise. It then became her duty, under the previously stated general rules of force applicable to rape cases (*People v. Faulisi* (1962), 25 Ill.2d 457, 461), to use resistance to prevent further acts. Yet she failed to object and followed defendant's instruction to lay back down and close her eyes. While prosecutrix points to her testimony that the instruction was given in a commanding voice, and that she was scared because of his appearance, the evidence does not show that she was restrained in any way, or that defendant used any actual force or threat of force upon her. We cannot conclude that prosecutrix was paralyzed by fear or overcome by defendant's superior strength. Her failure to resist when it was within her power to do so amounts to consent, and removes from the act an essential element of the crime of rape. (See *People v. Keeney* (1973), 10 Ill.App.3d 296, 300.) We therefore reverse defendant's rape conviction.

We consider defendant's final contention, that he was denied a fair trial because a courtroom spectator allegedly informed the excluded witnesses of the testimony being given, as it affects the deviate sexual assault conviction. Defense counsel called this alleged impropriety to the court's attention after the defense concluded its case, telling the court that he had been informed of these actions by the defendant's wife. The prosecutor said that when informed of this, he asked the spectator about it, and she said she had not told the people anything said in the courtroom. The prosecutor then stated that he had no objection to defense counsel's inquiry of the woman. Defense counsel replied that he was not asking for a mistrial or new trial, but that he was only laying the groundwork for a later motion for a new trial should he find from

any of the witnesses what the woman's conduct was. No motion for a new trial or mistrial on this basis was ever made.

■■ The general rule is that the failure by a defendant to raise an issue in the written motion for a new trial constitutes waiver of that issue, and it cannot be urged as a ground for reversal on review. (*People v. Pickett* (1973), 54 Ill.2d 280, 282.) It is further the rule that where parties in a criminal case knowingly and deliberately turn down the course of procedure which at the time appears to be in their best interest, they cannot, after decision has been rendered adverse to them, obtain retrial according to the procedure which they voluntarily discarded and waived. *United States v. Cook* (7th Cir., 1970), 432 F.2d 1093, 1101, *cert. den.* 401 U.S. 996, 28 L.Ed.2d 535, 91 S.Ct. 1224.

Defendant not only did not raise this issue in a post-trial motion, but rejected the opportunity for a hearing on the issue when it was offered to him. The court had nothing but hearsay information as to the woman's behavior, and was under no duty to conduct a hearing when told that the defense did not desire one.

The judgment of conviction for deviate sexual assault is affirmed. The judgment of conviction for rape is reversed.

Affirmed in part and reversed in part

GUILD, P. J., and DIXON, J., concur.