UNITED STATES

v.

Howard C. MARTIN, 387 58 3852 Lieutenant Commander (Frocked) (0–3), Medical Corps U.S. Naval Reserve.

NMCM 85 1161.

U.S. Navy-Marine Corps Court of Military Review.

7 Oct. 1985.

LCDR JAMES J. QUIGLEY, JAGC, USN, Appellate Defense Counsel.

LT RICKEY P. ROECKER, JAGC, USNR, Appellate Defense Counsel.

LT ROBERT G. SOSNOWSKI, JAGC, USNR, Appellate Government Counsel.

---

F.L. SALOMON II, Esquire, Civilian Defense Counsel.

Before KERCHEVAL, Senior Judge, and RAPP and GRANT, JJ.

KERCHEVAL, Senior Judge:

Appellant was tried and convicted at a general court-martial, military judge sitting alone, of one violation each of Articles 133 (conduct in the nature of indecent assault) and 134 (adultery), Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 933, 934. He was sentenced to confinement at hard labor for 12 months, forfeiture of all lineal precedence, forfeiture of $1,000.00 pay per month for 12 months, and dismissal from the Naval Service. The convening authority approved all of the sentence with the exception of the confinement, of which he approved only three days.

Appellant has assigned three errors in this case; we will address them in order. Although sordid, a recitation of the facts is essential. On the date the offenses occurred appellant was a medical officer assigned to the Acute Care Clinic at Camp Lejeune, North Carolina. Mrs. M, a patient there, was being seen by appellant for a continuing medical problem. After conducting a pelvic examination on Mrs. M with a female observer present, appellant had Mrs. M move to a consultation room and dismissed the observer. Appellant then sent Mrs. M to another examination room. With Mrs. M lying on the examination table, appellant at first palpated her abdomen, as if to continue the medical exam, but then moved his hands up to Mrs. M's chest, placed them underneath her blouse and bra, and began fondling her breasts. Without any response, physical or verbal, from Mrs. M, appellant continued such sexual "foreplay." Appellant then had Mrs. M move back to the original examination room. After a few minutes, appellant joined Mrs. M there and had sexual intercourse with her. On two later dates appellant kissed Mrs. M when they met at the hospital.

Over a month after her initial sexual contact with appellant, Mrs. M told another medical officer at the hospital about these incidents. Naval Investigative Service (NIS) was notified and solicited Mrs. M's aid by having her call appellant on the phone from the NIS office while agents listened in on other phones, and by asking her to visit appellant in the hospital while wearing a hidden transmitter. In a "Stipulation of Fact" submitted by trial counsel, the following information concerning the resultant conversations was given to the military judge:

During the telephone call and subsequent conversation, Mrs. [M] was advised by Agent Ambriz not to suggest that any further sexual activity was to occur and that she was not to attempt to deceive or trick the accused. She was to discuss the alleged rape and assaults and attempt to have the accused acknowledge that the acts did in fact occur. She was given discretion by NIS as to how the conversation was conducted.

Appellant was found not guilty of rape and of two violations of indecent assault (the two later kissing incidents) but was found guilty of an Article 133 offense consisting of the initial fondling of Mrs. M's breasts (not the later "foreplay") and of adultery.

I

THE MILITARY JUDGE ERRORED [sic] BY ADMITTING EVIDENCE OBTAINED IN VIOLATION OF APPELLANT'S ARTICLE 31, UCMJ RIGHT.

█ Appellant's above assigned error cites Article 31, UCMJ, 10 U.S.C. § 831, which provides that:

No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him at trial by court-martial.

Appellant alleges that Mrs. M, in cooperating with NIS, under the provisions of Military Rule of Evidence 305(b) became a person subject to the UCMJ and was therefore under an obligation to advise appellant of his Article 31 rights prior to talking with him. Since she did not advise him of such, his statements to her, both over the phone and in his office, were obtained in violation of Article 31 and should not have been admitted.

We disagree with the appellant's analysis. Long ago the Court of Military Appeals concluded, after careful study of Article 31's purpose and legislative history, that Congress did not intend its literal application in every instance. *United States v. Gibson*, 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954). In amplification, the Court later said

> that Congress did not consider a warning to be a *sine qua non*, but rather a precautionary measure introduced for the purpose of counteracting the presence of confinement, or other circumstances [of "presumptive coercion," implicit in military discipline and superiority], which might operate to deprive an accused of his free election to speak or to remain silent.

*United States v. Duga*, 10 M.J. 206, 209 (C.M.A.1981) quoting *United States v. Gibson*, 14 C.M.R. at 172. The prohibitions dictated by Article 31 were based on the concept that involuntary or coerced statements were to be excluded from trial because of their inherent potential for unreliability. *United States v. Lewis*, 12 M.J. 205, 208 (C.M.A.1982). Article 31 warnings were to provide servicepersons with a protection which was

> deemed necessary because of subtle pressures which existed in military society.... Conditioned to obey, a serviceperson asked for a statement about an offense may feel himself to be under a special obligation to make such a statement. Moreover, he may be especially amenable to saying what he thinks his military superior wants him to say—whether it is true or not.

*United States v. Armstrong*, 9 M.J. 374, 378 (C.M.A.1980).

The circumstances surrounding the giving of self-incriminating statements therefore became important in analyzing their admissibility. Only in situations where, because of rank, duty, or other similar relationship, there was the possibility of subtle pressure on a suspect to respond would Article 31, UCMJ, apply. *United States v. Duga*, 10 M.J. at 210. The Court of Military Appeals eventually set out a two-prong test in determining the applicability of Article 31:

> [W]hether (1) a questioner subject to the Code was acting in an official capacity in his inquiry or only had a personal motivation; and (2) whether the person questioned perceived that the inquiry involved more than a casual conversation.

*United States v. Duga*, 10 M.J. at 210.

In applying the *Duga* two-prong test to the case *sub judice*, we find no requirement for the Article 31, UCMJ, protections. Although Mrs. M, both in the telephone conversation and the "bugged" discussion in appellant's office, was acting under the direction of NIS agents, her status as the victim of the alleged offenses and as appellant's patient did not change; i.e., she in no way stood in a position of authority over appellant. It was therefore not possible for her to impose on him any of the subtle pressure or coercion to make a self-incriminating statement, which Article 31 was intended to counter. In addition, neither situation was of a custodial or punitive nature. Thus, we find that appellant had no rational basis to believe his conversations with Mrs. M were anything more than private, emotion-ridden colloquies, *see United States v. Whitehouse*, 14 M.J. 643, 644 n. 2 (A.C.M.R.1982), so that Article 31, UCMJ, did not apply to them.

## II

THE EVIDENCE WAS INSUFFICIENT TO PROVE APPELLANT'S GUILT OF THE OFFENSE OF INDECENT ASSAULT AS ALLEGED IN CHARGE II BEYOND A REASONABLE DOUBT.

and

THE MILITARY JUDGE ERRED IN THAT HIS FINDINGS OF GUILTY BY EXCEPTIONS OF INDECENT ASSAULT ALLEGED IN CHARGE II WAS (sic) INCONSISTENT WITH HIS FINDINGS OF NOT GUILTY OF RAPE AS ALLEGED IN CHARGE I.

(Assignments of Error II and III)

■ The charged offenses in this case were comprised of a series of sexual contacts between appellant and Mrs. M. Appellant was found guilty of an indecent assault involving the first sexual contact, which was initiated solely by appellant in the course of a medical examination after the stand-by corpswave had been dismissed. Mrs. M had no advance warning that her physical examination would turn into sexual gratifications for the appellant. His fraudulent use of his position as a medical officer gave Mrs. M no chance to consent or resist when surprised by his first improper touching. Consent to this initial contact could not be inferred from the subsequent and ostensibly consensual reactions of Mrs. M in relationship to the continuing sexual advances of appellant. *See* W. LAFAVE and A. SCOTT, CRIMINAL LAW § 57, at 409 (1983); F. LEE BAILEY and H.B. ROTHBLATT, *Crimes of Violence: Rape and Other Sex Crimes*, § 441 (1973). Appellant was therefore properly found guilty of indecent assault arising out of the initial fondling.

■ The situation changed, however, following that initial contact. From then on Mrs. M was clearly on notice that her physical examination was over and sexual activity had begun. Yet she made no motions to resist, she made no statements of resistance and, perhaps most striking, when given the opportunity prior to the sexual intercourse, she made no attempt to leave. By this time, any claim of surprise became incredible. The absence of consent was not evident therefore in these later encounters, so that the military judge's findings were not inconsistent. *See People v. Borak*, 13 Ill.App.3d 815, 301 N.E.2d 1 (1973).

In accordance with the above discussion, the findings of guilty and the sentence, as partially approved on review below, are affirmed.

Judge RAPP concurs.

GRANT, Judge (concurring):

I perceive the issue in the first assignment of error as one involving the extent to which military authorities can go in soliciting the information from an accused through the use of an informant-victim where the appellant is suspected of committing an offense of which he is neither charged nor confined, and has not yet entered into an attorney-client relationship.

In resolving this issue against the appellant, I find that the conversations between the informant-victim and the appellant were more than "casual" or "ordinary." It was stipulated that military authorities sent the informant-victim to talk with the appellant in "an attempt to have the accused acknowledge that the acts did in fact occur," although the informant-victim was given discretion in how the conversation was to be conducted. Clearly, the informant-victim was acting on behalf of government officials, as do most informants, the only difference being the degree of involvement in garnering the incriminating evidence. Nevertheless, I do not believe the degree of informant-victim involvement is the linchpin consideration in determining the statutory rights afforded an accused under Article 31.

Article 31 was designed to afford a military accused additional protection against undue influence, real or perceived, given the superior rank and position uniquely attendant to a military environment. However, in the case *sub judice*, the coercive element is absent. The incriminating statements were made by the appellant to the informant-victim during a telephone conversation and in the privacy of the appellant's office. The appellant demonstrated an eagerness to talk and to explain his actions during both conversations without the least suspicion that the informant-victim was cooperating with military authori-

ties and without the slightest hint of coercion. Under the circumstances, such deceptive practices would be sanctioned in the civilian sector. *See Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), where the Government planted a paid informant within the inner circles of a suspect not subject to confinement, who later testified against the suspect. Absent the element of coercion, there is no logical reason for extending to military persons rights not afforded to their civilian counterparts under the guise of Article 31, which I believe underpins the decision of the Court of Military Appeals in *United States v. Duga,* 10 M.J. 206 (C.M.A. 1981).

Nor do I find that considerations involving military due process demand a different result. The concept of fundamental fairness in informant cases was articulated by former Chief Justice Warren in his dissent in the *Hoffa* case. Chief Justice Warren described the informant as a jailbird, who contacted the accused under false pretense at the behest of government officials, who provided such officials with a running report of the accused's activities, and who was paid by the Government for his efforts. The majority opinion in sustaining the conviction dismissed the attack on the credibility of the informant as a matter within the province of the triers of fact, and recognized the need for investigators to have the latitude to perfect cases against a suspect who would otherwise go unpunished.

In applying the rationale of the majority in the *Hoffa* case to the present case, I am not unmindful of the role of military due process in policing official government misconduct not otherwise proscribed by Article 31. My opinion in this case does not sanction the unfettered use of informants to detect crime, where an informant is dispatched to elicit through deceptive practices untrue statements or otherwise engages in unconscionable activities. *See United States v. Gibson,* 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954). However, such is not the case here, where the informant-victim had a personal interest in bringing the offender to trial notwithstanding the fact that she also actively cooperated with military officials, she was not paid for her efforts, she spoke with appellant only in regard to matters relevant to their past relationship which gave birth to the crime committed upon the informant-victim through deception and in the performance of official duties, and the evidence was reliable and utilized by the Government in corroborating the commission of a crime against the informant-victim which otherwise would have gone unpunished. Under such circumstances, the actions of government officials did not offend the canons of decency and fairness or sense of justice alluded to in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

I concur in the disposition of the remaining assignments of error, and join in affirming the findings and sentence as approved on review below.