UNITED STATES, Appellee

v.

William E. DATZ, Gunners Mate Second Class
U.S. Coast Guard, Appellant

No. 03-0638

Crim. App. No. 001-69-01

United States Court of Appeals for the Armed Forces

Argued October 12, 2004

Decided April 25, 2005

BAKER, J., delivered the opinion of the Court, in which
GIERKE, C.J., and CRAWFORD, EFFRON, and ERDMANN, JJ.,
joined.

Counsel

For Appellant:  Lieutenant Commander Nancy J. Truax
    (argued).

For Appellee:   Commander Duane R. Smith (argued);
    Lieutenant Commander John S. Luce (on brief).

Military Judge:  R. W. Bruce

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

United States v. Datz, No. 03-0638/CG

Judge BAKER delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer and enlisted members at Alameda, California. Contrary to his pleas, he was convicted of assaulting a petty officer, treating the same petty officer with contempt, sexually harassing a female member of his crew, unlawfully entering the civilian quarters of a member of his crew, three specifications of dereliction of duty, and rape in violation of Articles 91, 92, 120, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 891, 892, 920, and 934 (2000), respectively. The adjudged and approved sentence provided for confinement for three months, and reduction from grade E-5 to grade E-3. Appellant did not receive a punitive discharge.

Appellant's conviction and sentence were reviewed by the Acting Judge Advocate General of the Coast Guard pursuant to Article 69, UCMJ, 10 U.S.C. § 869 (2000), who directed the United States Coast Guard Court of Criminal Appeals to review the record. The Court of Criminal Appeals considered fourteen assignments of error from Appellant. The findings and sentence were determined to be correct in law and were affirmed. United States v. Datz, 59 M.J 510 (C.G. Ct. Crim. App. 2003).

We granted review of the following three issues:

2

    I.     WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT TO SUSTAIN A CHARGE OF RAPE WHERE THE VICTIM WAS AWAKE AND COHERENT YET TOTALLY PASSIVE, FAILED TO REASONABLY MANIFEST LACK OF CONSENT, AND THE ONLY EVIDENCE OF "FORCE" WAS MOVING HER LEG TO ACHIEVE PENETRATION.

    II.    WHETHER THE MILITARY JUDGE ERRED BY ADMITTING TESTIMONY OF SUPPOSEDLY INCRIMINATING NONVERBAL GESTURES, WHERE THE INTERROGATOR COULDN'T REMEMBER WHAT QUESTIONS HE ASKED TO ELICIT THE GESTURES.

    III.  WHETHER THE MILITARY JUDGE ERRED IN SUPPRESSING EVIDENCE OF THE RAPE VICTIM'S MOTIVE TO MISREPRESENT.

Because we reverse this case on the basis of Issue II, we need not address Issues I and III.

The military judge erred when he admitted an investigator's testimony that Appellant manifested an adoptive admission, through an affirmative head nod, that the victim did not consent to intercourse. This testimony was predicated on the investigator's recollection of the following predicate question: "[I]t was something to the effect . . . and it would have been, 'She didn't in fact agree to have sex with you, did she?' or something to that effect." Given the ambiguity and the compound nature of the question asked, the Government did not meet its threshold burden of demonstrating that Appellant understood and unequivocally acquiesced in the statement at issue as presented by the investigator. Such threshold

determinations are not factual questions for the members to consider. Rather, they are foundational requirements to be determined by the military judge before adoptive admissions are presented to the members. Because this testimony effectively amounted to an admission by Appellant to the only contested element of the offense -- consent -- this was prejudicial error.

## Background

Appellant was charged with raping Petty Officer (PO) H at her townhouse in the early morning hours of June 27, 1999. At trial, Appellant conceded that intercourse had occurred, but argued that the intercourse was consensual. Nonetheless, the members convicted him of rape.

The Court of Criminal Appeals concluded that testimony that Appellant had moved PO H's leg in order to have intercourse provided a legally sufficient basis for members to have found the element of force. With respect to the element of consent, trial counsel presented evidence that when Appellant showed up in PO H's bedroom in the early morning hours, she told him to leave and that she answered his crude questions about having sex by saying "no." The Government also presented evidence that PO H turned away from Appellant hoping he would fall asleep, and that when he continued with the act, she cried.

4

At a session during trial pursuant to Article 39(a) UCMJ, 10 U.S.C. § 839 (2000), trial counsel proffered testimony from Special Agent (SA) Van Arsdale that during his interrogation Appellant had nodded in affirmative response to, and thereby indicated that he agreed with, four questions. These questions touched on: (1) whether PO H had left her door unlocked for Appellant or for someone else, (2) whether at a previous gathering where others were present, she had singled him out and invited him to her room, (3) whether it was true that PO H's invitation, rather than to him individually, was to a group of people, and (4) whether or not PO H agreed to have intercourse with him. The following colloquy took place between the trial counsel and SA Van Arsdale:

> Q. Do you recall how you confronted him with that?
> A. In the same manner. This whole line of questioning was done in the same manner. "Isn't it true the door wasn't meant to be unlocked for you but somebody else?" Something along those lines.
>
> . . . .
>
> Q. Regarding [H] singling out and inviting him to her house and to her room. How would you have confronted the accused with that?
> A. It would have been along the same lines. Either "Isn't it true?" or "Seaman [H] didn't in fact invite you at all, did she?"
> Q. So posed as a question again?
> A. Posed as a question.

Just before that exchange, the military judge had

5

commented on SA Van Arsdale's questioning of the accused:

>Military Judge: [T]he way you phrased the question, it doesn't seem like it would call for a yes or no answer.
>
>[Trial Counsel:] Special Agent Van Arsdale, do you recall how you confronted the accused with Petty Officer [H]'s invitation being proposed to a group of people?
>
>[SA Van Arsdale:] Yes.
>
>Q. Can you explain that?
>
>A. Would have posed the question something like, "Isn't it true that the invitation wasn't directed toward you, but in fact it was directed towards a large group of people?" And then his response was an up-and-down head bob.
>
>. . . .
>
>Q. Special Agent Van Arsdale, I'm going to ask you again if you confronted the accused as to whether or not Petty Officer [H] had agreed to have sex with him. And did you?
>
>A. Yes.
>
>Q. And do you recall if he responded?
>
>. . . .
>
>A. He responded affirmatively to the question I posed.
>
>. . . .
>
>A. Again, it was something to the effect -- this whole line of questioning was around the same time, and it would have been, "She didn't in fact agree to have sex with you, did she?" or something to that effect.

Trial defense counsel initially objected to the admission of this testimony on the grounds that it was irrelevant and that its probative value was outweighed by its prejudicial effect. Counsel then went on to question

6

whether the testimony proffered demonstrated that Appellant

had manifested his adoption of or belief in the statements:

> [T]here's a real question -- I mean, the question's
> posed.  What does [the nodding] mean?  Is he nodding
> affirmatively to the question, or is he just
> acknowledging the question, or is he just ticked off
> that these questions are coming at him one after
> another . . . ?

Later, during cross-examination, defense counsel asked

SA Van Arsdale about his questioning of Appellant and

Appellant's subsequent responses:

> Q.  You asked the question, he nods his head, you
>     don't follow up with the question, "Is that a
>     yes?"
> A.  That's correct.
> Q.  So with all these questions, same exact scenario?
>     You ask the question, boom, you move on to the
>     next one, right?
> A.  Pretty much, yes.

Over defense counsel's objections, the military judge

admitted SA Van Arsdale's testimony stating:

> Well, it seems to me that this is a question for
> the members as to the weight that they're going to
> give to Van Arsdale's testimony.
>
> . . . .
>
> [I]n terms of [Military Rule of Evidence
> (M.R.E.)] 403, I think there is certainly enough
> evidence there for the members to conclude that the
> accused made the admissions that Van Arsdale's
> testifying to.  And if they do, then that has strong
> probative value on those issues.
>
> On the other hand, the defense may convince them
> that the testimony of Van Arsdale on those issues has
> little or no value, and if they give it little or no

7

value, then, of course, there's no prejudice to the defense.

Notwithstanding the objection based on M.R.E. 403, the defense counsel did not expressly object that the head nods were inadmissible adoptive admissions under M.R.E. 801(d)(2). But as noted above, he did question whether it could really be determined what Appellant's head nodding meant. The special agents had not audiotaped or videotaped Appellant's interview. Nor had Appellant been asked to prepare a written statement or sign a written statement prepared by the agents.[1] The military judge did not enter

---

[1] There are two documents describing Appellant's interrogation. The first document consists of four pages of handwritten notes taken during the interview of Appellant by SA Lanigan as SA Van Arsdale conducted the interview. These notes, which do not include the questions at issue and do not record any corresponding nonverbal admissions by Appellant, are not part of the record of trial. The second document, a three-page typed interview report, is dated July 8, 1999. This document reflects in paragraphs e through h the following nonverbal admissions by Appellant:

Leaving the Door Open

e.   When confronted that [PO H's] comment about leaving her door unlocked was directed at someone else and not to Datz, he nodded affirmatively, but did not verbally respond.

Invitation into Home

f.   When confronted that [PO H's] invitation to her house that evening was made to a group of people, he acknowledged that he was standing near a group when the invitation was made and that the comment was not directed towards him.

Invitation to Group or Appellant

g.   When confronted that [PO H] did not single him out and invite him to her house or to her room that evening, he nodded affirmatively, but did not verbally respond.

Consent to Sex

predicate findings about the head nods as adoptive admissions.

On appeal, Appellant contends the military judge erred by admitting SA Van Arsdale's testimony concerning Appellant's nonverbal head nods.  Of the four adoptive admissions at issue, three addressed specific circumstantial aspects of the offense.  The fourth admission went directly to one of the elements of rape, namely, whether the victim consented to the sexual intercourse.  Appellant argues that because the head nods were admitted as adoptive admissions under M.R.E. 801(d)(2), before the evidence could be presented before the members, the military judge was required to make a predicate finding that Appellant understood the content of the statements, and unequivocally acknowledged the statements in adopting them as his own.  Appellant further argues that he did not adopt the statements that SA Van Arsdale says he did.  Appellant contends that some of the

---

h.    When confronted that [PO H] did not agree to have sex with him, he nodded affirmatively, but did not respond verbally.  When asked whether [PO H] told him to leave, he denied she made that comment.

Although these documents were referenced at trial and on appeal, they were not admitted into evidence at trial and the military judge stated on the record, "I haven't specifically looked at the notes, or anything like that."  Therefore, our review of the military judge's evidentiary rulings on adoptive admissions is based on the evidence before the military judge at trial.

9

questions posed to him during his interrogation were ambiguous, making it impossible to determine what it was that he was adopting, if anything, including his response to the critical question of consent. Finally, Appellant asserts that, given the uncertainty regarding these alleged adoptive admissions, their prejudicial effect outweighed any probative value. On the issue of waiver or forfeiture, Appellant argues that his objection was made known at trial and the judge's error should be reviewed for an abuse of discretion rather than for plain error.

According to the Government, military courts have recognized and admitted head nods as affirmative responses. Further, the Government argues that the military judge conducted a proper balancing test under M.R.E. 403 when he determined that SA Van Arsdale's testimony regarding Appellant's affirmative head nods was admissible. Finally, the Government argues that Appellant failed to object to this evidence at trial on the ground of M.R.E. 801(d)(2)(B). On this basis, the Government argues, this Court should test the military judge's ruling for plain error.

## Discussion

We first address the parties' arguments regarding waiver or forfeiture, so as to determine the standard of

10

review we will apply in this case.  Defense counsel, objecting to SA Van Arsdale's testimony on the basis of M.R.E. 401 and 403, stated, "The objection is 401, 403, whether or not this evidence is relevant and whether or not any probative value it has is outweighed by the prejudicial effect."  Defense counsel did not cite to M.R.E. 801(d)(2)(B).

However, his argument on the motion addressed the issue of adoptive admissions generally and specifically raised concerns about whether Appellant's nodding adopted the admissions posed by SA Van Arsdale.  Among other things, trial defense counsel argued:

> The concerns -- I said this rule does not fall under the [admission by] silence rule [see United States v. Cook, 48 M.J. 236 (1998)], but the concerns that exist as a basis for the rule against admissions by silence by the accused apply here in that the rule is concerned with questions about the potential manufacture of evidence.
>
> . . . .
>
> Another question is -- as with the silence rule, there's a question of the ambiguity about what this [nodding] means.
>
> . . . .
>
> But there's a real question -- I mean, the question's posed.  What does it mean?  Is he nodding affirmatively to the question, or is he just ticked off that these questions are coming at him one after another after he's already told them what occurred? So important to consider in that, Your Honor, is the

11

nature of these questions, the series of questions, one after another, after another, after another.

Under M.R.E. 103, in order to preserve an objection when "the ruling is one admitting evidence" the objecting party must make "a timely objection or motion to strike . . . in the record, stating the specific ground of the objection, if the specific ground was not apparent from the context."  M.R.E. 103(a)(1).  The rule also provides that "[n]othing in this rule precludes taking notice of plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge."  M.R.E. 103(d).

In the present context, we believe defense counsel met his burden under M.R.E. 103.  Although defense counsel cited M.R.E. 401 and 403, he did so squarely in the context of an argument about Appellant's nonverbal admissions.  Thus, the specific ground for objection was known to the military judge.  A party is not necessarily required to refer to a specific rule by citation.  A party is required to provide sufficient argument to make known to the military judge the basis of his objection and, where necessary to support an informed ruling, the theory behind the objection.  United States v. Banker, 60 M.J. 216 (C.A.A.F. 2004); United States v. Brandell, 35 M.J. 369, 372

12

(C.M.A. 1992)(holding that "[a] defense counsel has the
duty to identify the 'specific grounds' upon which an
objection to evidence is based," but that this duty is met
when "all parties at trial fully appreciate the substance
of the defense objection and the military judge has full
opportunity to consider it").

But if Appellant preserved an objection based upon
M.R.E. 801(d)(2)(B), the additional question framed by the
Government is whether Appellant was also required to raise
each argument in support of his objection at the time of
trial or forfeit the opportunity to do so on appeal, absent
a showing of plain error.  Specifically, the Government
argues that Appellant did not object on the ground that the
questions posed to Appellant were ambiguous, but rather
only because the questions were repetitive and it was not
clear whether Appellant was adopting the admissions.

We disagree with this argument.  On its face, M.R.E.
103 does not require the moving party to present every
argument in support of an objection, but does require
argument sufficient to make the military judge aware of the
specific ground for objection, "if the specific ground was
not apparent from the context."  This is not a case where
counsel has shouted "hearsay," and only later has come to a
conclusion as to the basis for that objection.  Here

13

counsel's objection to the adoptive admissions was "brought to the attention" of the military judge.

To require counsel for either side to identify all available arguments in support of his or her objection is unnecessary in a context where the military judge is presumed to know the law and follow it. In the heat of trial, where counsel face numerous tactical decisions and operate under time pressure, we do not require such elaboration to preserve error on appeal.

We turn now to the substantive foundational requirements for adoptive admissions, as well as a military judge's responsibilities in admitting adoptive admissions.

"A military judge's ruling on admissibility of evidence is reviewed for abuse of discretion." United States v. Johnson, 46 M.J. 8, 10 (C.A.A.F. 1997). In order to be overturned on appeal, the judge's ruling must be "'arbitrary, fanciful, clearly unreasonable' or 'clearly erroneous,'" United States v. Taylor, 53 M.J. 195, 199 (C.A.A.F. 2000)(quoting United States v. Travers, 25 M.J. 61, 62 (C.M.A. 1987)), or "influenced by an erroneous view of the law," United States v. Sullivan, 42 M.J. 360, 363 (C.A.A.F. 1995); United States v. Owens, 51 M.J. 204, 209 (C.A.A.F. 1999).

United States v. Datz, No. 03-0638/CG

### Substantive Foundation

Under Federal Rule of Evidence 801(d)(2)(B) and M.R.E. 801(d)(2)(B), a statement is excepted from the general hearsay rule when it is one that has been offered against a party who has manifested an adoption or belief in its truth. An adoptive admission can be accomplished through nonverbal means, such as a hand or head motion. The text of the rule does not explicitly incorporate body gestures, but neither does it preclude such admissions.[2]

When a statement is offered as an adoptive admission, the proponent must present sufficient proof to support a finding that the party against whom the statement is offered heard, understood, and acquiesced in the statement. United States v. Robinson, 275 F.3d 371, 383 (4th Cir. 2001); United States v. Beckham, 968 F.2d 47, 51-52 (D.C. Cir. 1992); Skiskowski v. United States, 158 F.2d 177, 181-82 (D.C. Cir. 1946); United States v. Joshi, 896 F.2d 1303, 1311 (11th Cir. 1990); United States v. Sears, 663 F.2d 896, 904 (9th Cir. 1981); United States v. Rodriguez-Cabrera, 35 F. Supp. 2d 181, 184-85 (D.P.R. 1999). These

---

[2] Relying on United States v. Wallace, 34 M.J. 353, 355 (C.M.A. 1992), the Government argues that this Court has previously upheld the admission of an appellant's head nods as an affirmative adoptive admission. Although Wallace was convicted in part on evidence of adoptive admissions, this Court's opinion in Wallace did not address adoptive admissions and therefore does not inform our review of the military judge's ruling in this case.

15

United States v. Datz, No. 03-0638/CG

foundational requirements have been applied in military

courts as well.  United States v. Farris, 21 M.J. 702, 705

(A.C.M.R. 1985); United States v. Garrett, 16 M.J. 941,

943-944 (N.M.C.M.R. 1983).

We cite Garrett favorably because we agree with, and

therefore adopt, that court's articulation of the

foundational requirements for admitting adoptive

admissions, namely, a showing that (1) the party against

whom it is offered was present during the making of the

statement; (2) he understood its content; and (3) his

actions or words or both unequivocally acknowledged the

statement in adopting it as his own.  Garrett, 16 M.J. at

943-44.

In Appellant's case, however, the Government did not

meet its foundational burden of demonstrating that

Appellant understood and acquiesced in the statements

admitted at trial before those statements were admitted

into evidence.  First, a review of the questions identified

during the Article 39(a) session reflects ambiguity as to

the actual questions asked of Appellant.  During that

session for example, SA Van Arsdale could not remember the

exact questions he asked Appellant.  SA Van Arsdale

testified that he "[w]ould have posed the question

something like, 'Isn't it true that the invitation wasn't

16

directed toward you, but in fact it was directed toward a large group of people?' . . . 'Isn't it true the door wasn't meant to be unlocked for you but somebody else? Something along those lines.'" Similar qualifications were repeated throughout SA Van Arsdale's testimony. At one point, the military judge interjected, "I think that the last question was too vague to really mean anything since we don't know what all the questions were."

Second and most importantly, on the critical question of consent, the questions asked of Appellant, even if they were recalled exactly as given, were ambiguous because they contained compound elements. For example, at the Article 39(a) session, SA Van Arsdale testified that he asked Appellant:

> A.  Again, it was something to that effect -- this whole line of questioning was around the same time, and it would have been, "She didn't in fact agree to have sex with you, did she?" or something to that effect."

In response to such a question, it is not clear what an affirmative nod means. It could mean that PO H "did not in fact agree to have sex" with Appellant. But it could also mean, she did, i.e., "did she?" "Yes." Alternatively, a "no" nod might signal agreement with the initial premise of the question, i.e., communicating "no, she did not agree to have sex." Arguably, it might also reflect something

17

altogether different, like a dismissive gesture borne of Appellant's irritation or frustration with the line of questioning.[3] As a result, this testimony does not satisfy the Government's threshold burden of showing that Appellant understood the question and unequivocally adopted the predicate of the question as his own.

## Prejudice

Adoptive admissions in context can present uncertain and ambiguous applications of the law of evidence, which are not solely questions of fact for the fact-finder. In this case, the fourth adoptive admission as presented by SA Van Arsdale was tantamount to a confession of the crime, but without the indicia of reliability of a written confession signed by the accused.

Here, Appellant's responses addressed and answered the main issue in the case: whether Appellant's sexual encounter with PO H was consensual. On the question of consent, the Government offered two witnesses, the victim and SA Van Arsdale. The Government presented no other direct evidence of the rape. In light of this record, we

---

[3] Although not part of our analysis, which hinges on the evidence presented to the military judge before admitting the statements, we note that before the members, the questions that SA Van Arsdale asked Appellant were presented with comparable ambiguity. On questioning by defense counsel, SA Van Arsdale agreed that he had asked Appellant: "[H] never invited you to the house?" and "[H] never agreed to have sex with [you]?"

cannot say with fair assurance that SA Van Arsdale's testimony regarding Appellant's affirmative responses to his questions did not have substantial influence on the panel's decision.  See Kotteakos v. United States, 328 U.S. 750 (1946).

"'[T]he defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.'"  Arizona v. Fulminante, 499 U.S. 279, 296 (1991)(quoting Bruton v. United States, 391 U.S. 123, 139-40 (1968)(White, J., dissenting)).  Here that admission rested upon a law enforcement officer's interpretation of body language.  Without some additional written, verbal, or video confirmation, this amounted to a confession by gesture of a critical element of the offense -- and the only contested element of the offense.  Gestures and reactions vary from person to person under the pressure of interrogation.  As a result, the military judge's decision to admit evidence of Appellant's head nodding without adequate foundation was prejudicial error.

## Decision

The decision of the United States Coast Guard Court of Criminal Appeals is reversed as to Charge IV (rape) and specification 1 of Charge VI (unlawful entry).  The findings of guilty as to those offenses and the sentence

are set aside.  The remaining findings of guilty are affirmed.  The record of trial is returned to the Judge Advocate General of the Coast Guard.  A rehearing on the affected findings and the sentence is authorized.