OPINION OF THE COURT
MATHEWS, Judge:
The appellant stands convicted of one specification of absence without leave, terminated by apprehension, in violation of Article 86, UCMJ, 10 U.S.C. § 886; one specification of dereliction of duty, in violation of Article 92, UCMJ, 10 U.S.C. § 892; and seven specifications of indecent assault, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The appellant pled guilty to the Article 86 and 92, UCMJ, Charges and Specifications, and does not challenge them on appeal. He pled not guilty to the Article 134, UCMJ, Charge and Specifications, but guilty to the lesser-included offense (LIO) of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928. The prosecution successfully opted to prove the offenses as charged.[1]
The military judge sitting alone as a general court-martial sentenced the appellant to a dishonorable discharge, confinement for 7 years, and reduction to the grade of E-l. The convening authority approved the findings and sentence as adjudged. On appeal, the appellant presents three issues for our consideration: (1) Whether the evidence is legally and factually sufficient to sustain the appellant’s conviction for committing an indecent assault on seven different women; (2) Whether the evidence is legally and factually sufficient to sustain the appellant’s conviction for the words “and inserting his fingers into the vagina of’ in Specification 2 of the Second Additional Charge; and (3) Whether the appellant received ineffective assistance of counsel.[2]
*613 After our initial review of the record of trial, the appellant’s assignment of errors, and the government’s reply thereto, we specified the following additional issue: Whether the appellant’s pleas of guilty to assault consummated by battery were improvident because evidence adduced during his providen-cy inquiry indicated that he obtained consent from the alleged victims due to fraud in the inducement, rather than fraud in the factum.
After careful consideration of the entire record, and the excellent briefs by appellate counsel for both sides, we conclude that the evidence was both legally and factually sufficient to establish the appellant’s guilt beyond a reasonable doubt as to indecent assault, and that the appellant’s pleas to assault consummated by battery were provident. Finding no error, we affirm.

Background

The appellant was assigned to the 5th Logistics Readiness Squadron at Minot Air Force Base (AFB), North Dakota. According to the record, the appellant frequently pulled duty in the motor pool, but in his spare time devoted his energies and attention to passing himself off as a doctor. He obtained a number of medical textbooks and paraphernalia associated with the medical profession, including syringes, swabs, hospital gowns, and a speculum. He outfitted himself with a pager and cell phone and told women he met that he was an on-call doctor at a local obstetrics and gynecology clinic. He became sufficiently conversant with terms and concepts associated with the field of gynecology to convince a number of women that he actually was a doctor studying to become a specialist in that field.
The appellant told these women that his training regimen required him to practice conducting pelvic examinations and collecting swabs for Pap tests. During the course of his “examinations,” the appellant routinely inserted his fingers and sometimes a speculum into the women’s vaginas. He offered them various inducements, including cash (which he claimed would be paid either by his school or the Air Force to reimburse them for their time) and prescription contracep-fives. In exchange, they would essentially be, as one woman put it, “guinea pig[s].”
In fact, however, the appellant was lying. He was not a doctor, nor was he in training to become a gynecologist. He never helped any of the women obtain contraceptives, and for the most part did not keep his promises to pay.[3] His false claims allowed the appellant to perform pelvic examinations on seven women, including two minors. In each exam, the women were nude from the waist down. In addition to the exams themselves, the appellant routinely drew blood samples. In one instance, he gave a minor an injection near her vagina when she complained that the examination was painful.
For the most part, the women described the appellant as seemingly knowledgeable in the field of gynecology and professional in his bedside manner. There were, however, a number of oddities they noted about his behavior. For example, none of the exams were conducted at a doctor’s office, hospital, or clinic. Instead, most were in hotel rooms, and one was done in the back of a U-Haul truck. The appellant seemed very persistent in his quest to secure “patients” for his exams. One recalled, “like every time I talked to him, it was like, can I do a test on you? Can I do a test on you?” Another described the appellant as eventually “convincing” her to submit to an exam, and two more described how the appellant insisted on conducting additional or follow-up exams, claiming that he did not get “enough information” the first time.
During some of the examinations, the appellant rubbed or fondled the legs of his “patients” or made sexual comments about them. He told the two minors that they “had nice butts” and that if they were older, he would want to have sex with them. He subsequently admitted to an acquaintance (who was not one of his patients) that he “had gotten turned on” by some of the women he examined; and in fact, he eventually was able to persuade four of the women to engage in intercourse with him.

*614
Discussion

On appeal, the appellant seeks reversal of his convictions for indecent assault. His initial brief to this Court echoes his unsuccessful contention at trial: That he harbored no sexual intent when examining his “patients,” and, as a consequence, his acts were not indecent. In briefing the specified issue, the appellant for the first time argues his plea to assault consummated by a battery was improvident, because the consent of his victims—while admittedly obtained by fraud— was secured by fraud in the inducement, rather than fraud in the factum. Because the appellant’s claims address different elements of the offense of indecent assault,[4] we will consider them separately, in the order they were raised.

Legal and Factual Sufficiency of Evidence

Demonstrating Indecent Intent

The appellant contends before us, as he did at trial, that he cannot be convicted of indecent assault because the evidence is legally and factually insufficient to establish that he acted with the specific intent to gratify his lust or sexual desires. We review the findings of the trial court using the standards articulated in United States v. Turner, 25 M.J. 324 (C.M.A.1987). Our task is to determine whether, considering the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found each of the elements proven beyond a reasonable doubt; and then whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced beyond a reasonable doubt of the appellant’s guilt. Id. at 324-25. Applying these standards to the question of the appellant’s intent, we find the government met its burden.
It is reasonable to conclude that the appellant harbored the requisite intent simply from the nature of the acts themselves. There is also ample ancillary evidence supporting that conclusion. The appellant apparently devoted considerable time and effort to creating a persona that would allow him access to the sex organs of virtual strangers, and the circumstances surrounding his “exams” further establish his intentions. In particular, the appellant’s persistent entreaties to be permitted to conduct the exams, his promises of money or prescription medications to secure permission, his insistence on unnecessary “follow-up” exams, and his use of sites where he could neither assure the sterility of the environment nor avail himself of specialized medical equipment in the event of an adverse reaction to the medication he injected, all demonstrate the appellant’s obsessive interest. His contemporaneous statements and actions— telling the underage females they had “nice butts;” rubbing the legs of one of the adult “patients” while making sexual comments to her; and his admission that he was “turned on” during his exams—clearly show his acts to be sexually motivated. Finally, there is the inescapable fact that the appellant eventually engaged in sexual relations with several of his “patients,” and told two more that he would want to have sex with them, if only they were of age.
The appellant claims that this evidence merely points to his desire “to ‘perpetuate a lie, a myth’ and a ‘false self-image’ ” of being a doctor. The military judge was not persuaded by this explanation, and neither are we. As appellate government counsel observed, the examinations were not needed to establish the appellant’s medical credentials; rather, he had to establish his credentials to secure the participation of his “patients” in the exams. Furthermore, we cannot help but note that the practice of medicine encompasses many dozens, if not hundreds, of specialties. If the appellant merely wanted to pretend to be a doctor for the sake of false prestige, he had a wide variety of fields to *615 choose from. Yet the appellant did not elect to impersonate an endocrinologist, cardiologist, or surgeon, but instead selected the one medical specialty that would give him an excuse to routinely inspect and touch women’s sex organs. Finally, we are struck by the intrinsic absurdity of the appellant’s claim that he was trying to enhance his bona fides as a medical professional by conducting a gynecological examination in the back of a U-Haul truck.
We find the evidence was sufficient for a reasonable trier of fact to conclude that the appellant acted with intent to gratify his lust or sexual desires, and we are convinced that was his intent. We resolve this assignment of error against the appellant.

Providency of the Appellant’s Plea

The appellant further argues, in response to the specified issue, that he cannot be convicted of indecent assault because he had the consent of his victims. This claim necessarily amounts to an attack on the providen-cy of his guilty pleas to the LIO of assault consummated by battery.
We evaluate the military judge’s decision to accept a guilty plea using an abuse of discretion standard. United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F.1996). To properly exercise their discretion, military judges must conduct an inquiry into the factual basis for the plea. United States v. Care, 40 C.M.R. 247, 253, 1969 WL 6059 (C.M.A.1969); Rule for Courts-Martial (R.C.M.) 910(e). If, after entering a plea of guilty, an accused sets up a matter inconsistent with his plea, then the plea is improvident and cannot be accepted. Article 45(a), UCMJ, 10 U.S.C. § 845(a). The inconsistency must be of a nature to create “a ‘substantial basis’ in law and fact for questioning the guilty plea,” although the factual assertions that give rise to the inconsistency need not necessarily be plausible nor credible. United States v. Prater, 32 M.J. 433, 436 (C.M.A.1991); United States v. Lee, 16 M.J. 278, 281 (C.M.A.1983). When such an inconsistency is raised, the military judge must inquire further to determine whether the inconsistency can be resolved, and reject the guilty plea if it cannot. Prater, 32 M.J. at 436. See also United States v. Adams, 33 M.J. 300, 302-03 (C.M.A.1991); United States v. Thompson, 45 C.M.R. 300, 301, 1972 WL 14181 (C.M.A.1972); United States v. Marcy, 62 M.J. 611, 613 (A.F.Ct.Crim.App.2005), pet. denied, No. 06-0245/AF (C.A.A.F. 18 Apr 2006).
An assertion that the victim consented to an assault-type offense may be inconsistent with a plea of guilty, because consent can “convert what would otherwise be a battery into a noneriminal activity.” United States v. Arab, 55 M.J. 508, 515 (Army Ct.Crim.App.2001).[5] In some instances, however, consent may be deemed invalid because it was obtained by fraud. United States v. Booker, 25 M.J. 114, 116 (C.M.A.1987). In contract law, for example, a “meeting of the minds” is a prerequisite to formation of a valid agreement. When one party procures the assent of the other party through misrepresentation, the effect on the contract will depend on the nature of the falsehood. A falsehood that misrepresents the contract’s “true nature” is “fraud in the factum,” and a contract so procured is void because the parties never truly had a meeting of the minds. Langley v. FDIC, 484 U.S. 86, 94, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). Other misrepresentations may amount to “fraud in the inducement,” leaving a valid contract that can be voided by the aggrieved party. Id. at 93, 108 S.Ct. 396. See also Restatement (Second) of Cont.: Misrepresentation, Duress, and Undue Influence § 163 (1981).
These concepts have migrated into criminal law to address situations where a person consents to some act, but does so only as a result of fraud. As in contract law, consent obtained by fraud in the factum is invalid. Booker, 25 M.J. at 116. See also State v. Bolsinger, 697 N.W.2d 126, 2005 WL 756767 (2005); McNair v. State, 108 Nev. 53, 825 P.2d 571 (1992); People v. Harris, 93 Cal. App.3d 103, 155 Cal.Rptr. 472, 478 (1979); People v. Borak, 13 Ill.App.3d 815, 301 N.E.2d 1, 4 (1973). Consent obtained by *616 fraud in the inducement, however, may still be effective to make lawful what would otherwise be criminal conduct.
Recognizing that some degree of acquiescence or cooperation from his victims was required for the appellant to examine them, the military judge advised the appellant as follows:
MJ: Let me give you a definition here and it might help you a little bit. Consent obtained by fraud in the inducement, a promise to pay money, misrepresentation as to your marital status, or to respect somebody in the morning, is valid consent. If you had said any of those things and she consented, then that would be consent and there would be no crime. Do you understand that?
ACC: Yes, Ma’am.
MJ: Consent obtained by fraud in the factum, misrepresentation as to the nature of the acts performed is not valid consent and is not a defense. Do you understand that?
ACC: Yes, Ma’am.
The military judge’s definitions were narrowly drawn but substantially correct. See Booker, 25 M.J. at 116-17; see also United States v. Outhier, 45 M.J. 326, 330 (C.A.A.F.1996). As detailed below, however, the doctrine of fraud in the factum is somewhat broader than the military judge explained at trial.
The line between fraud in the inducement and fraud in the factum is not always easy to discern. Our superior appellate court has held that when a person secures the consent of another to an act of sexual intercourse by impersonating a third person—the spouse of the victim, for example-that deception amounts to fraud in the factum, even though the victim fully understood the nature of the act itself. Booker, 25 M.J. at 116; United States v. Hughes, 48 M.J. 214, 216 (C.A.A.F.1998). When a person pretends to conduct an examination for medical purposes, but actually does it to gratify his own sexual urges, he misrepresents the fundamental nature of the exam and thereby also commits fraud in the factum. See, e.g., Booker, 25 M.J. at 119 (Everett, C.J., concurring in the result).
Here, the appellant’s victims knew his identity and, for the most part, knew what to expect during their exams.[6] At first glance, then, the appellant’s misrepresentations appear to amount to fraud in the inducement rather than fraud in the factum, because they were based on his qualifications to perform the examinations rather than the procedures that would be followed in the exams themselves.[7] Yet the appellant’s purported qualifications were clearly central to his victims’ consent. During the appellant’s plea inquiry as to the first charged victim, the military judge engaged the appellant in the following discussion:
MJ: Did you obtain her consent by fraud in the factum?
ACC: Yes, Ma’am.
MJ: How did you do that?
ACC: Ma’am, I lied and told her that I was studying to be a gynecologist.
MJ: And that you were qualified to do this exam?
ACC: Yes, Ma’am.
MJ: And was that true?
ACC: No, Ma’am.
MJ: Would she have consented if she knew that you weren’t qualified to do that? Do you think?
ACC: I do not believe so, Ma’am.
(Emphasis added).
We are unaware of any military case in which an accused’s false claims as to his qualifications to do an otherwise eonsented-to act has been held to be fraud in the factum. However, we are convinced here that it was. In professional settings, the qualifications of *617 the service provider often are more important than his or her identity. A patient slated for arthroscopic knee surgery, for example, might have no qualms about substituting Dr. Able for his preferred physician, Dr. Baker, if both are equally qualified; and yet that same patient would adamantly refuse to allow Airman Charlie, from the motor pool, to scrub up instead. The critical issue is not who wields the scalpel, but whether they are qualified to do so. We believe that to grossly mislead a patient about such critical information amounts to fraud in the factum.
This approach has the support of our superior appellate court. Although not couched in the language of fraud in the fac-tum, the Court of Appeals for the Armed Forces has noted that cooperation obtained by a “material and essential” misrepresentation as to one’s qualifications may, under certain circumstances, be treated as no consent. Outhier, 45 M.J. at 331. We find the admissions by the appellant during his Care inquiry are more than sufficient to establish the “material and essential” nature of his misrepresentations. In addition to the exchange cited above, the appellant admitted that his false claims were “critical” to obtaining his victims’ consent; that they “wouldn’t have consented” if they knew the truth about his lack of qualifications; and that “the only reason” they let him conduct his examinations was because they were misled.
Deceit was a prerequisite to the appellant’s deviant schemes, and whether his false claims are classified as fraud in the factum or merely labeled “material and essential” misrepresentations, we conclude that he had no lawful consent from his victims. The appellant cannot mount a challenge to his pleas from a platform built of his own lies. The military judge did not err in accepting the appellant’s pleas, nor in finding him guilty of the offenses as charged.

Conclusion

We have carefully considered the appellant’s remaining assignments of error and resolve them adversely to him. United States v. Polk, 32 M.J. 150, 153 (C.M.A.1991). The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); United States v. Reed, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are
AFFIRMED.

. The appellant was also charged with an eighth specification of indecent assault, but the government's witness on that specification did not appear the morning of the appellant's trial. The military judge denied the prosecution’s request for a continuance until the afternoon, and granted a defense motion for a finding of not guilty under Rule for Courts-Martial (R.C.M.) 917.

. This issue is raised pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982).

. One woman testified that the appellant gave her a check, but she never cashed it.

. The elements of indecent assault are: (1) That the accused assaulted a certain person not the spouse of the accused in a certain manner; (2) That the acts were done with the intent to gratify the lust or sexual desires of the accused; and (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Manual for Courts-Martial, United States (MCM), Part IV, ¶ 63b (2005 ed.). (This provision is the same as contained in the 2002 edition, which was in effect at the time of the appellant’s trial.)

. Not all consent is created equal: In some instances, the consent of the immediate victim of a crime under the UCMJ is irrelevant, because of the broader military and societal interests in prohibiting the criminal activity. United States v. Bygrave, 46 M.J. 491, 493 n. 4 (C.A.A.F.1997).

. The youngest of the appellant’s seven victims, however, testified that she had never undergone a pelvic exam before and did not know what to expect.

. The military judge concluded—as do we—that the appellant acted with intent to gratify his sexual desires. As noted above, however, the appellant vigorously disputed this conclusion. In considering the providency of the appellant’s pleas, we look to what the appellant admitted, not contested facts that were proven at trial. United States v. Jordan, 57 M.J. 236, 238 (C.A.A.F.2002).